Ranney, J.
In the opinion of the court, all the questions raised in this case, and very thoroughly argued, are resolved, ¡when a proper construction is placed upon a single section of *83 the general banking law of the. State of New York, under which the plaintiff was organized, and from which it derives all its corporate powers.
The existence, construction, and legal effect of the statutes of other states, are rather matters of fact than of law, when they become material to the decision of cases arising in our courts. If a statute of another state has received an authoritative construction there, no inquiry into its correctness is allowable; it must be received as an established fad, and it is only in the absence of such an authoritative exposition, that we are permitted to construe the statute as we would one of our own. Unfortunately, we are not advised, that the precise question, upon which the decision of this case depends, has been settled in New York; and we are, therefore, reduced to the necessity of so construing the statute, in the light of principles established by judicial decisions in that state, as shall seem most conformable to the intentions of the legislature which enacted it.
Erom the pleadings and evidence it appears that on the 2d of March, 1857, the defendants were the holders and owners of ten negotiable promissory notes, made and indorsed by parties residing in Chicago, Illinois, amounting in the aggregate to the sum of $25,000, and payable, with ten per cent, interest at that place, within less than one year from that time. The notes were regular business paper, given by the makers to the defendants upon a sale of lumber. At the date above mentioned, one of the defendants presented these notes, at the banking house of the plaintiff, for discount, and after negotiation, they were taken by the plaintiff at a rate of discount, including the interest accruing upon the notes, of about twenty per cent. They were then regularly indorsed by the defendants, and upon that contract of indorsement, on a part of the notes, this action is brought.
At the time the discount was made, the defendants were indebted to the plaintiff, on paper then about to mature, in the sum of $9200, and it was agreed that the proceeds of the discount should be applied by the bank to the payment of this> *84 paper as it matured, and the balance be paid over to the defendants when called for.
We think the court below was right, both upon the state of the pleadings and the weight of the evidence, in finding that the Chicago paper was not taken, either as security for or in payment of the previous indebtedness of the defendants to the bank; and we see nothing in the evidence on either side to change the legal rights of the parties, from that arising upon the face of the transaction itself. Existing promissory notes were discounted by the plaintiff, and if it had the corporate capacity to purchase such paper, and if, in the absence of evidence to the contrary, such a transaction imports a purchase, there is nothing in the case to deprive it of the benefits of that position. But if such a discount, made by a bank organized under the act referred to, necessarily imports a loan upon the paper, and it is made at a usurious rate of discount, or if the bank has been given no corporate capacity to purchase and hold such paper, it is clear there is nothing in the case to remove the taint of illegality from the transaction, or to invest the bank with a capacity which the statute has not conferred, and it can not recover.
The general statute against usury, to which, it is conceded, this institution is subject, provides: “that the rate of interest upon the loan or forbearance of any money, goods or things in action, shall continue to be seven dollars upon one hundred dollars for one year, and after that rate for a greater or less sum, or for a longer or shorter time, and that no person or corporation shall, directly or indirectly, take or receive in money, goods or things in action, or in any other way, any greater sum or value for the loan or forbearance of any money, goods or things in action, than is above prescribed; and that all 'bonds, bills, notes, assurances, conveyances and all other contracts or securities whatsoever, except bottomry and respondentia bonds and contracts, and all deposits of goods or things whatsoever, whereupon or whereby there shall be reserved or taken or secured, or agreed to be reserved or taken any greater sum, or greater value, for the loan or for *85 bearance of any money, goods or things in action than is above prescribed shall be void.”
In the construction of this statute, it has been settled by a long line of decisions, that the statute only extends to a loan of money, and that a sale and purchase of an existing and complete chose in action of any kind, when not used as a mere cover for usury, at any rate of discount agreed upon by the parties, is not a loan within the meaning of the statute, and may be lawfully made; and that, although the seller indorses or guaranties the paper upon Us transfer to the purchaser. This last proposition is not universally acquiesced in, but it is certainly established by the general current of authority in that state.
It is also undeniably clear, that the term discount, when used in a general sense, is equally applicable to either business or accommodation paper, and is appropriately applied, either to loans or sales by way of discount, when a sum is counted off, or taken from the face or amount of the paper, at the time the money is advanced upon it, whether that sum is taken for interest upon a loan, or as the price agreed upon a sale. ,
In respect to accommodation paper, it is fully settled, that every transaction by which it is acquired, is to be deemed a loan and within the statute, although the party taking it is ignorant of its true character, and supposes it to be business paper. Clark v. Sisson, 22 N. Y. 312. It is perhaps not going too far, on the other hand, to say that, in general, a transfer of business paper, is prima facie a sale, and that it lies upon those who question its validity to show that it was really a loan disguised under the form of a sale.
And this brings us to the precise question upon which the decision of this case depends — was this bank empowered to discount, by way of purchase, promissory notes ? Or must all such discounts be deemed loans, and thus be brought within the purview of the usury law ?
Its powei s are expressed in these words :
“Such association shall have power to carry on the business *86 of banicing, by discounting bills, notes, and other evidences of debt; by receiving deposits; by buying and selling gold and silver bullion, foreign coins and bills of exchange, in the manner specified in their articles of-association, for the purposes authorized by this act, by loaning money on real and personal security, and by exercising such incidental powers as shall be necessary to. carry on such business; to-choose one of their number as president of such association, and to appoint a cashier and such other officers and agents as their business may require, and to remove such president, cashier, officers, and agents at pleasure, and appoint others in their places.”
As connected with the present inquiry, three substantive powers are expressed — to discount, to buy and sell, and to loan. It may discount bills, notes, and other evidences of debt; it may buy and sell, among other things, bills of exchange; and it may loan money on real and personal security.
As we understand the plaintiff’s counsel, they insist that, under the first of these powers, this bank may buy promissory notes, without any restriction as to the rate at which they may be purchased, while the loans it may make under the third, are necessarily restricted to seven per cent. And it is argued, that to adopt any other construction is to encounter the absurdity of making both clauses mean the same thing. They certainly do not mean the same thing, nor does the opposite construction lead to that result. By the first, the power is expressly given to take the interest in advance, and without that it would not be a discount, and it is confined to the acquisition of bills, notes, and other evidences of debt; while in the last, the interest need not be taken in advance, and the money may be advanced upon either real or personal security. A discount may be a loan, but every loan is not a discount; and there is nothing inconsistent in the fact, that the bank was expressly authorized to make loans in either way. But the naked power to discount paper is not given; it is the “power to carry on the business of banicing by ” (among other things) “ discounting bills, notes, and other evidences of debt.” And *87 the question is, what is discounting paper, as understood in the business of banking ?
McCulloch in his Commercial Dictionary (vol. 1, p. 63), under the word Banking, says: “ Banks are establishments intended to serve for the safe custody of money; to facilitate its payment by one individual to another; and sometimes for the accommodation of the public with loans.” In all the American systems of banking, with which we have any acquaintance, the furnishing of loans, at fixed rates of interest, to facilitate the business and commerce' of the country, has been made a cardinal feature in the institution of banks, and in giving them extensive corporate privileges; and in almost every instance, they have been allowed to take the stipulated interest by way of discount, or in advance.
But we are not without light as to the judicial understanding of this term, when applied to the business of banking. In Flecker v. The Bank of the United States, 8 Wheat. R. 338, Judge Story says : “ Nothing can be clearer than that by the language of the commercial world, and the settled practice of the banks, a discount by a bank means, ex vi termini, a deduction or drawback made upon advances or loans of money on negotiable paper, or other evidences of debt, payable at a future day, which are transferred to the 'bank. We suppose the legislature used the language in this its appropriate sense.”
The case of Talmadge v. Pell, 3 Seld. R. 328, is entitled to especial consideration, not only because it is a New York case, decided by the court of last resort, upon very full consideration, but because it involved an examination of the powers of one of the banks organized under the act which we are now considering. In that case, the bank had attempted to purchase a large amount of the bonds of the State of Ohio to sell again, giving therefor its certificates of deposit payable at a future day, and assigning mortgages held by it as collateral security. In denying the power of the corporation to make such a purchase, and in giving their reasons for holding the assignment of the securities illegal and void, the court say: u The subjects pertaining to the business of banking are desig *88 nated, and the express powers of the association are limited to them, and to such incidental powers as may be necessary to transact the business thus defined by the legislature.” In answer to the position taken in argument, that the transaction might be regarded as a discounting of the bonds of the state by the bank, the court say: “ They did not discount the bonds of Ohio, as was intimated in the argument, for this in hanking is only a mode of loaning money.”
It is quite unnecessary to cite from our own reports and those of other states, similar language employed in reference to the meaning of this term, when applied to the business of banking. If the eminent judges of the court of appeals were justified in saying, in reference to this very law, and to the very power under consideration, that it only provided for “a mode of loaning money,” it can hardly be expected, that either there or elsewhere, transactions falling within its provisions should be relieved from the operation of the usury law, which extends to all loans, in whatever form made, or however artfully they may be covered up or disguised. If the bank had no power to purchase state bonds because not authorized by its charter, it is equally decisive against its power to purchase promissory notes — the one being no less “ evidences of debt ” than the other; and if discounting them in the exercise of its banicing powers, is but a mode of loaning its money upon the paper, it is very clear that it could not reserve more than seven per cent, interest for the time the paper had to run.
I know it is said that the very object of the act of 1838, was to authorize free banking, and to place the associations formed for that purpose, very much upon the footing of natural persons. This may be so; but free banking is one thing, and an unlimited right to acquire paper at any rate of discount, is quite another; and we find it very difiScult to believe, that the past experience of the people of the State of New y ork, has so impressed them with the beneficent character of the latter business, that they thought it necessary and expe'dient to aggregate wealth for its prosecution, or to increase its power and facilitate its operations by investing it with the *89 privileges and immunities of corporate existence. It seems much more consonant to reason, and consistent with what has been done everywhere else, that they should have authorized institutions for the legitimate purpose of providing safe places of deposit, of aiding the business community by loans at fixed and living rates of interest, and of transmitting money to other points through the agency of the bill of exchange; and, notwithstanding the difficulties we encounter in construing a foreign statute, such, we think, was the intention of those who enacted the law in question.
Without undertaking to say what may be the legal bearings of this transaction, in other directions, we are of the opinion that the contract of indorsement was made upon a usurious consideration, and can not be enforced.
2. A question of evidence was raised at the trial, which wo find no difficulty in saying was correctly decided. The plaintiff offered evidence tending to show a custom and usage of a number of the banks organized under this law, in accordance with what had been done in this instance, which was rejected by the court. '
The courts of New York have settled this question. In the case of N. Y. Firemen's Ins. Co. v. Ely, 2 Cow., at page 707, Sutherland, J., says, upon the question of usury : “ That the principle of calculation adopted by the plaintiff, was the one in general or universal usage among banks, can not alter the law of the case. A statute can not be abrogated by custom or usage of a particular trade. The money lenders of the country might as well set up a usage of their own, and then plead it in bar of the statute.” Chancellor Kent, also, in his opinion in the case of Dunham v. Gould, 16 Johns. 367, 374, says: “ The plaintiff offered to show upon the trial, that the charge of a commission of two and a half per cent, upon the exchange of notes was within the understanding, usage, and custom of merchants, and this evidence was overruled as immaterial and useless. The question of the competency of this evidence appears to be the only point in the case..... It is perfectly idle to talk of a custom of merchants to take a *90 commission above the legal rate of interest, on the exchange of notes. The custom of merchants is not applicable to the case,” etc.
These cases are also substantially in accordance with the ruling of this court, in Protection Insurance Co. v. Harmer, 2 Ohio St. Rep. 452.
We do not find any error in the proceedings of the court of common pleas, and its judgment is therefore affirmed.
Brinkerhoee, C.J., and Scott, Wilder and White, JJ., concurred.