CLARK *et al. v.* SISSON *et al.*

To estop the parties to a bill of exchange by their representations in respect to its consideration and validity, such representations must be outside of the face of the bill.

The recital in the bill of value received, and its indorsement, do not estop the acceptor or the indorser from proving that the acceptance and indorsement were for the accommodation of the drawer, and that the bill had no inception until its usurious discount by the plaintiff.

APPEAL from the Superior Court of the city of New York. Action against acceptor and indorsers upon a bill of exchange drawn by Freeman Loomis and accepted by Isaac Sisson, payable to the order of the drawer. Upon the trial it was proved that the acceptance was without consideration and made for the purpose of enabling Loomis to borrow money. Loomis indorsed it and procured one Canfield to indorse it in the name of J. J. Stewart & Co., of which firm he was a member, and to obtain a discounting of it by the plaintiffs at a usurious rate of interest. Canfield made no statement whatever to the plaintiffs, nor did they make any inquiry of him, as to the character of the bill, but he simply asked them to buy the bill and they paid him the money upon no other information than that derived from the mere inspection of the paper. The judge dismissed the complaint as against both the defendants. The judgment having been affirmed at general term the plaintiffs appealed to this court. The case was submitted on printed arguments.

*Marshall S. Bidwell,* for the appellants.

I. 1. There is no ground for charging a party with usury, if he makes the contract and advances the money in ignorance of the facts which constitute usury. (*Holmes* v. *Williams*, 10 Paige's, 326–333; *Aldrich* v. *Reynolds*, 1 Barb. Ch. R., 43; *Jackson & Walsh* v. *Colden*, 4 Cow., 266; *Ramsey* v. *Clark*,

*Clark v. Sisson.*

4 Humph., 244; *Taylor* v. *Bruce,* 1 Virginia [Gilmer's], 42; *Whitworth* v. *Adams,* 5 Rand., 333; *Law* v. *Sutherland,* 5 Gratt., 357–360, 361; *Smith* v. *Beach,* 3 Day's, 268; *Middletown Bank* v. *Jerome,* 18 Conn., 448; *Murray.* v. *Harding,* 3 Wils., 395, 396; *Davison* v. *Franklin,* 1 B. & Ad. R., 142.) If a party misrepresents facts, or, by his silence, allows another to act upon a mistake of facts, he is thereby estopped from setting up those facts afterwards to the prejudice of the person who has been misled. His silence binds him upon the same principle as if he had by express misrepresentation misled the other party. In both cases, he is estopped upon equitable principles from denying the truth of the facts upon which the other had been induced by such misrepresentations or silence to rely; his attempt to avail himself of such misrepresentations is deemed fraudulent. (1 Story's Eq. Jur., § 385; *Picard* v. *Sears,* 6 Adol. & El., 474; *Town* v. *Needham,* 3 Paige's, 555; *Watson's Executors,* v. *McLaren,* 19 Wend., 563, 564; 1 Cow. & Hill's Notes, 204.) There may be a misrepresentation by actions as well as by words. (*Chisholm* v. *Gadsden,* 1 Strobh. [Law.], 210.) If it should be objected that by this doctrine a door will be opened for the evasion of the statute, the answer is—first, that this objection would apply to all cases where the defence of usury is met by proof of representations on which the plaintiff has acted, and which estop the defendants; and secondly, that it should be left to the jury (as in analogous cases) to determine whether the plaintiffs acted innocently or intended to evade the statute. (*Carstairs* v. *Stein,* 4 Mau. & Selw., 192–202.) If there was no intention to evade the statute, the objection should not prevail; the presumption is always in favor of innocence and good faith.

II. In this case, there was a legal presumption raised by the mere fact of acceptance, that the acceptor had in his hands funds of the drawer, to the amount of the bill, and, of course, third parties, unless informed to the contrary, had a right to presume that such was the fact. (*Griffith* v. *Reed,* 21 Wend., 504, 505; *Suydam* v. *Westfall,* 4 Hill, 216; *Raborg* v. *Peyton,* 2 Wheat. R., 385–387; *Vere* v. *Lewis,* 3 T. R., 182.) 2. The

defendants joined in a written representation that Sisson had accepted the bills for value received. The bills purported to have been drawn and accepted for "value received." This was evidence as an admission or statement of the defendants that the bills had been drawn and accepted for value received; it would have been received as evidence of that fact, not only as against them but as between third parties. (*Mandeville* v. *Welch*, 5 Wheat. R., 277 ; *Highmore* v. *Primrose*, 5 Mau. & Selw., 65.) It was not the less to be relied upon, because it was contained in the bills themselves than it would have been if it had been in a letter or certificate. On the contrary, it was more' credible and less suspicious than if it had been stated, formally, in a certificate. 3. The defendants are bound by this presumption and this representation, so far as respects third persons who have acted upon them innocently and in good faith. (*Lobdell* v. *Baker*, 1 Metc., 193–201; *S. C.*, 3 Metc., 469; *Polhill* v. *Walter*, 3 Barns. & Ad., 114; *Fort* v. *Meacher*, 1 Riley's Law R., 248.)

III. There was nothing in the circumstances of the transaction to involve suspicion. The bill was taken by the plaintiffs in the usual course of business, from one who had frequently sold notes and bills to them. It was brought to them as a thing for sale. They were not asked to make a loan; did not intend to make a loan; did not suppose they were making a loan. It had the appearance of business paper; it bore a prior date; was drawn on a different place; payable in a short time, and without grace. It was indorsed by J. J. Stewart & Co. The conduct of Canfield under the circumstances amounted to a virtual representation that the bill was a valid subject of sale. (1.) Canfield's possession of the bill was *prima facie* evidence that he was the owner. (*Lowney* v. *Perham*, 2 App. R., 235; *Lord* v. *Appleton*, 3 Shepl. R., 270; *Cruger* v. *Armstrong*, 3 J. C., 6, 7.) (2.) Upon a sale of personal property, a warranty of title is implied, unless something is said to the contrary. (*Heermance* v. *Vernoy*, 6 J. R., 5–8.) Canfield, therefore, warranted that he had a good title to the note, which necessarily implied that it was not a nullity, but had legal

existence, and was a thing which he could sell. (3.) The defendants were bound by Canfield's representations. (22 Wend., 260; 6 Hill, 337.)

IV. Canfield was the agent of Sisson as well as of Loomis. (*Anderson* v. *Broad*, 12 N. Y. Leg. Obser., 187.) If Sisson did not expressly authorize Loomis to employ Canfield to sell the bill, &c., he put it in his power to mislead the plaintiffs, and, therefore, ought to be bound by the acts of Loomis in this matter, on the principle that wherever one of two innocent persons must suffer by the acts of a third person, he who has enabled such third person to occasion the loss must sustain it. (*Gibson* v. *Pennington*, Court of Appeals, April, 1852; 2 T. R., 60; 1 T. R., 16; 1 Salk., 289; 7 Paige, 69; 13 Wend., 572; 23 Wend., 268; 2 Hill, 465; Story on Agency, §§ 56–264; M'Naughten's Sel. Ca., 118; 3 Sumn., 252; 1 Metc., 193; 3 Metc., 469.)

*A. L. Pinney*, for the respondents.

COMSTOCK, Ch. J. We find no room for doubt in this case. The bill in question was drawn by the defendant Loomis on the defendant Sisson, and was accepted by the latter for the accommodation of the drawer. The instrument did not take effect as a valid obligation until it was discounted by the plaintiffs. It was indorsed by the drawer, because it was payable to his order, and also by the firm of J. J. Stewart & Co., before it came to the plaintiffs' hands; but that firm never owned the bill. It was delivered by the drawer to Canfield, one of the members of that house, not for money or value advanced upon it, but for the purpose of negotiating it on the drawer's account. Canfield indorsed it in the name of his firm to the plaintiffs, who took the paper at a usurious rate of interest. These facts seem to have been proved without contradiction. If there was any doubt about them proper to be solved by a jury, there was no request made at the time that the case should go to the jury. The judge dismissed the complaint, assuming the facts to be as stated. The exception taken to that ruling only raises a question of law.

And, in point of law, the transaction was a usurious loan of money. It was a loan, because it could not be anything else. The plaintiffs could not purchase a bill which had no owner—in other words, which had no legal existence until it came to their hands. It is true that the words "value received" were a part of the instrument; and these words imported that the bill was drawn and accepted for value in the hands of the drawee or acceptor. It may also be assumed that the plaintiffs supposed they were purchasing an obligation which bound the parties before they advanced their money upon it. But these circumstances do not relieve the case. Neither the drawer nor the acceptor made any representations to the plaintiffs beyond the language contained in the contract itself. But if the very words of a contract are to be taken as a representation of facts which estops the party who makes the obligation from interposing a defence inconsistent with that representation, then all contracts must be deemed valid which appear to be so on their face, and not only usury, but duress and fraud, can no longer be alleged. Such is not the rule of law. (*Mechanics' Bank* v. *The New Haven R. R. Co.*, 3 Kern., 638.) Again, the indorsement and negotiation of the bill to the plaintiffs by the firm of J. J. Stewart & Co. undoubtedly imported that this firm were the owners of the obligation, and that they were selling it as a valid instrument in their hands. But here, also, there was no representation outside of the contract. The drawing, the acceptance, and the indorsement of the bill, all spoke, it is true, in the very language of a bill founded on some real transaction. But there was no other language by which the plaintiffs were deceived. They acted, so far as we know, without inquiry; and having advanced their money at a rate of interest which the law forbids, they must take all the hazards which attend such dealings. They cannot impart life to the contract by alleging that they acted under false impressions as to its character, because those impressions were not produced by any conduct or representations of the defendants which ought to prevent the real nature of the transaction from being brought to the test of the statute against usury. (*Dowe* v. *Schutt*, 2

Denio, 621; *Williams* v. *Storm*, 2 Duer, 52; *Powell* v. *Waters*, 8 Cow., 669.) The judgment must be affirmed.

SELDEN, J., took no part in the case; all the other judges concurring,

Judgment affirmed.