Thomas P. Akers & others *vs.* Charles Demond.

In an action on a bill of exchange, in which the defence of usury is set up, conversations between the drawer and first indorser are competent evidence, so far as they relate to and form part of the transactions of indorsing and negotiating the bill and disposing of the proceeds.

In an action on a bill of exchange, the admission of the holder that he discounted it at a usurious rate is competent evidence, although made at an interview had for the purpose of an adjustment.

The refusal of a deponent to answer an impertinent cross-interrogatory is not sufficient reason for rejecting the deposition.

A party to a suit who has taken the deposition of a witness may take a second deposition of the same witness.

An objection that interrogatories in a deposition are leading cannot be first taken when the deposition is offered in court.

In an action on a bill of exchange, the drawer and indorser are competent witnesses to show usury to which the holder was a party.

The St. of 1863, *c.* 242, does not preclude the defence of usury in an action on a bill of exchange, if the holder was a party to the usury.

Bills of exchange, drawn in New York and payable in this Commonwealth, accepted and indorsed for the accommodation of the drawer, were, at the request of the indorser, dis- counted in New York by the plaintiffs at a rate of interest greater than was at the time lawful by the laws of New York or of this Commonwealth. Part of the proceeds was paid to the drawer, and the rest was lent by him to the indorser. *Held*, that as by the law of New York the bills were void in the hands of the plaintiffs, they could not recover against the acceptor, even if he held property of the drawer as collateral security.

Contract by Akers, John W. Russell and Robert L. Pease, partners under the name of Akers, Russell & Pease, on two bills of exchange, each for $1500, dated March 21, 1867, signed by Gilbert B. Reed, payable to the order of William H. Russell, indorsed by said Russell, drawn on the defendant, "Charles De-

mond, 91 Washington Street, Boston," and accepted by him. One of the bills was on sixty, and the other on ninety days The answer alleged that the acceptance of the bills was for the accommodation of Reed ; that the plaintiffs lent money upon them in New York, reserving interest at a rate usurious by the laws of New York; and that therefore they were void in the hands of the plaintiffs.

At the trial in the superior court, before *Reed*, J., it appeared that the plaintiffs were, at the time of the transactions in question, residents of New York, and the defendant a resident of Boston. The defendant testified that he received the bills in a letter from New York, accepted them for the accommodation of Gilbert B. Reed, and returned them to him; that he had at the time property of Reed in his hands; and that Reed had since consented that he should hold the property to secure him from liability on these bills.

The defendant offered in evidence the deposition of Reed, in which he testified that he had a conversation with William H. Russell, in which it was agreed that Russell should get the bills discounted and return the proceeds of one of them to him, and he should lend the proceeds of the other bill to Russell ; that Russell handed him the check of the plaintiffs for $1455 as the proceeds of the sixty days' bill; and that he had since had a conversation with the plaintiff Pease, when he went to see him " for the purpose of adjustment," in which Pease admitted that the plaintiffs took one and a half per cent. a month on the bills. The plaintiffs objected, at the time of taking this deposition and at the trial, to the statements as to the conversations between Russell and Reed, and between Pease and Reed, and also as to the competency of Reed to testify to anything showing usury. But the judge admitted the deposition.

The defendant further offered in evidence the deposition of William H. Russell, in which he testified that he indorsed the bills at Reed's request; that Reed agreed to lend him half the money when the bills were sold; that he sold the bills to the plaintiffs; that he did not remember how much they paid him, but that he paid to Reed about one half of what he received

from them. The plaintiffs objected, at the time of taking this deposition, to the competency of Russell to testify to anything tending to show usury or impeach the bills. The plaintiffs filed cross-interrogatories to Russell, of which the fourth was, "Did you tell Reed that the plaintiffs had refused to discount the bills, had not the money, and that you had to get it done at the house of Fiske & Belden, or words to that effect?" The answer to this was, "I believe I did report to him that I got the discount at Fiske & Belden's." The fifth cross-interrogatory was, "Were these statements made by you true or false?" The deponent, replied, "I decline to answer this question." The plaintiffs at the trial objected to the admission of the deposition on account of the refusal of the witness to answer the fifth cross-interrogatory. But the judge, against the plaintiffs' objections, admitted the whole deposition.

The defendant also offered in evidence a second deposition of William H. Russell, in which, in reply to an interrogatory whether the agreement with Reed (testified to by him in his answers to the first deposition) was at the time of his indorsement of the bills or subsequently, he stated that it was at the time of the indorsement. The third, fourth, fifth and eighth of the interrogatories in this second deposition, and the answers thereto were as follows: *Int.* 3. "Whether or not were the said bills sold by you to the plaintiffs at a rate of interest exceeding seven per cent. *per annum?*" *Ans.* "They were." *Int.* 4. "Were or were not the said bills sold by you to the plaintiffs at a rate of interest exceeding twelve per cent. *per annum?*" *Ans.* "Yes; that is, the interest and exchange exceed that rate." *Int.* 5. "Were or were not said bills sold by you to the plaintiffs at a rate of interest of eighteen per cent. *per annum?*" *Ans.* "I cannot recollect." *Int.* 8. "Please state whether you paid to Reed the full amount of money received from sale of one of said bills; if yea, which?" *Ans.* "I paid to Reed the full amount of the proceeds of sale of the sixty days' bill." The plaintiffs, at the time of taking this deposition, objected "1. to taking the deposition of this deponent a second time; 2. to the competency of this deponent to testify to any fact tending to

show usury or impeach the bills negotiated by him; 3. to all the direct interrogatories, without exception." At the trial, besides insisting on the first and second objections, the plaintiffs objected to the third, fourth, fifth and eighth interrogatories as leading. But the judge admitted the deposition.

There was evidence that the rate of exchange between Boston and New York was twenty-five or fifty cents on a thousand dollars, on sight drafts. There was no evidence as to the rate of exchange on time drafts. The defendant also introduced in evidence the statutes of New York relating to usury.

On this evidence, which was all the material evidence in the case, the judge ruled that the defence was not established, directed the jury to return a verdict for the plaintiffs, and reported the case for the determination of this court.

*J. B. Thayer*, for the defendant.

*S. Wells*, for the plaintiffs.

WELLS, J. The defence to this suit is, that the bills of exchange are void for usury, under the laws of New York, where they were first negotiated. The statute of New York, Rev. Sts. part 2, *c.* 4, tit. 3, § 5, declares such securities void " whereupon or whereby there shall be reserved or taken or secured, or agreed to be reserved or taken," a greater rate of interest than seven per cent. The superior court ruled that, upon the testimony offered, no defence was established; and instructed the jury to return a verdict for the plaintiffs. The testimony is reported for our consideration, so far as admissible and competent, subject to the several objections made thereto by the plaintiffs.

1. Conversations between the drawer and first indorser of the bill are competent, so far as they relate to and form part of the transactions of indorsing and negotiating the paper and disposing of the proceeds.

2. The conversation between Reed and one of the plaintiffs, in regard to the rate of discount charged by them upon the bills, was competent to show that fact. It was no part of any negotiation for an adjustment, although occurring at an interview for that purpose, but was an independent statement of a collateral fact.

3. The refusal of William H. Russell to answer the question, whether certain statements made by him at the time he negotiated the bills to the plaintiffs, and which had been called for by two previous questions, were true or false, is not a ground for rejecting the whole deposition. If the purpose of the inquiry was to prove what the facts were in those particulars, it should have been made by questions directly as to those facts. If the purpose was to show false representations made at that time, it was immaterial to the issue. The question being impertinent, the answer is excusable.

4. We know of no rule of law or of practice which forbids a second or supplementary deposition of the same witness to be taken, either for the proof of additional facts, or to supply omissions in the answers to the interrogatories of the first commission.

5. The objection that certain interrogatories are leading is an objection to the form merely, and cannot be taken for the first time when the deposition is offered in court.

6. The drawer and indorser are competent witnesses to prove the usury; the plaintiffs not being innocent indorsers, but parties to the usury.

7. For the same reason, the defence is not precluded by the statute of Massachusetts of 1863, *c.* 242.

The testimony thus held to be admissible and competent tends to prove that the bills in suit were drawn by Reed and indorsed by William H. Russell, the payee, in New York, and accepted by the defendant in Boston, being upon their face addressed to him there. Both the acceptance and the indorsement were for the accommodation of Reed. The possession of collateral security, whether subsequent or at the time, does not change the character of the acceptance or the relations of the parties. *Dowe* v. *Schutt*, 2 Denio, 621. After the return of the acceptances to Reed, by an arrangement between him and the nominal payee, the latter procured the bills to be discounted by the plaintiffs, at the rate of one and a half per cent, a month. The proceeds of one of the bills were retained by William H. Russell, the payee, as a loan from Reed, and the proceeds of the other handed over by him to Reed.

As the case is now presented, in the absence of controlling testimony on the part of the plaintiffs, the foregoing statement must be taken as the result of the evidence. It shows that the transaction by which the plaintiffs became holders of the bills was the original negotiation of the paper ; a loan upon discount, and not a mere sale of the bills. They are therefore open to the defence of usury. This is so clearly shown to be the law of New York, by the decisions of the courts of that state referred to in *Ayer* v. *Tilden*, 15 Gray, 178, as to require no further citations.

The defendant is entitled to set up the usury, although not paid by himself, and although the loan was not made to him nor on his account. *Van Schaack* v. *Stafford*, 12 Pick. 565. *Dunscomb* v. *Bunker*, 2 Met. 8. *Cook* v. *Litchfield*, 5 Selden, 279. *Clark* v. *Sisson*, 22 N. Y. 312.

The difficult question in the case arises from the fact that the paper was made payable in Boston. It is contended that the contract of the acceptor is to be governed by the laws of the place where the bills are made payable. The general principle is, that the law of the place of performance is the law of the contract. This rule applies to the operation and effect of the contract, and to the rights and obligations of the parties under it. But the question of its validity, as affected by the legality of the consideration, or of the transaction upon which it is founded, and in which it took its inception as a contract, must be determined by the law of the state where that transaction was had. No other law can apply to it. Usury, in a loan effected elsewhere, is no offence against the laws of Massachusetts. In a suit upon a contract founded on such a loan, the penalty for usury could not be set up in defence, under the statutes formerly in force in this Commonwealth. Neither can a penalty, as a partial defence, authorized by the laws of one state, be applied or made effective in the courts of another state. *Gale* v. *Eastman*, 7 Met. 14. Such penal laws can be administered only in the state where they exist. But when a usurious or other illegal consideration is declared by the laws of any state to be incapable of sustaining any valid contract, and all con-

tracts arising therefrom are declared void, such contracts are not only void in that state, but void in every state and everywhere. They never acquire a legal existence. Contracts founded on usurious transactions in the state of New York are of this character. *Van Schaack* v. *Stafford,* 12 Pick. 565. *Dunscomb* v. *Bunker,* 2 Met. 8. The fact that the bills now in suit were accepted in Boston and were payable there does not exempt them from this operation of the laws of New York. They were mere " nude pacts," with no legal validity or force as contracts, until a consideration was paid. The only consideration ever paid was the usurious loan made by these plaintiffs in New York. That then was the legal inception of the alleged contracts. *Little* v. *Rogers,* 1 Met. 108. *Cook* v. *Litchfield,* 5 Selden, 279. *Clark* v. *Sisson,* 22 N. Y. 312. *Aeby* v. *Rapelye,* 1 Hill, 1. By the statutes of New York, that transaction was incapable of furnishing a legal consideration; and, so far as the bills depend upon that, they are absolutely void. The original validity of such a contract must be determined by the law of the state in which it is first negotiated or delivered as a contract. *Hanrick* v. *Andrews,* 9 Porter, 9. *Andrews* v. *Pond,* 13 Pet. 65. *Miller* v. *Tiffany,* 1 Wallace, 298. *Lee* v. *Selleck,* 33 N. Y. 615.

There is no pretence that a discount of one and a half per cent. a month was justifiable by reason of any added exchange between New York and Boston; nor that it was otherwise than usurious, if any amount of charge upon paper payable elsewhere than in New York would be usurious there. It has often been held, in states where restrictions upon the rate of interest are maintained, that it is not usury to charge upon negotiable paper whatever is the lawful rate of interest at the place where the paper is payable, although greater than the rate allowable where the negotiation takes place. But if the paper is so made for the purpose of enabling the larger rate to be taken, or the greater rate is received with intent to evade the statutes relating to usury, and not in good faith as the legitimate proceeds of the contract, it is held to be usury. So also, if a greater rate is taken than is allowed by the law of either state, it is usury Such a rate necessarily implies an intent to disregard the stat-

utes restricting interest. *Andrews* v. *Pond*, 13 Pet. 65. *Miller* v. *Tiffany*, 1 Wallace, 298. The legal rate of interest or discount in Massachusetts is six per cent. *per annum;* and, at the date of the negotiation of these bills, a greater rate than six per cent. was usurious and unlawful.

It follows, from these considerations, that, upon the evidence as it now stands upon the part of the defendant, the transaction, upon which alone the bills in suit must depend for a consideration to give them validity as contracts, was illegal, and such as, under the laws of New York, renders them utterly void. No action, therefore, can be maintained upon them in the courts of Massachusetts, unless the effect of this evidence be in some way overcome or controlled. The verdict for the plaintiff must be set aside, and a *New trial granted.*