## VERNON K. STEVENSON *vs.* JACOB W. PAYNE & others.

A contract made and to be performed in New Orleans during the rebellion, in considera-tion of a loan of currency issued by the so called Confederate States, and which, ac-cording to the subsequent decisions of the supreme court of Louisiana, is void under art. 2026 of the Civil Code of that state, which declares that "every condition of a thing impossible, or *contra bonos mores,* or prohibited by law, is null, and renders void the agreement which depends on it," is void in this Commonwealth.

CONTRACT on fifteen promissory notes, signed by Alfred A. Williams, dated at New Orleans March 21, 1862, payable to the order of the defendants at their office in New Orleans, and in-dorsed by them. Answer, among other things, that the notes were given upon a contract for a loan of Confederate money, and were therefore without consideration, the defendants being accom-modation indorsers ; and were also void for illegality of the con-sideration. Trial in this court, before *Wells,* J., who made a report thereof, which, so far as it relates to the point decided, was as follows :

" The evidence tended to show that Williams was a planter in Louisiana ; that the defendants were his brokers or agents in New Orleans ; that the loan was made by the plaintiff to Williams in New Orleans through the intervention of the defendants ; that at that time all the parties were resident within the limits and were adherents of the Confederacy, and New Orleans was in the pos-session and control of the so called Confederate government ; and that the amount of the loan was advanced by a check on a bank in New Orleans, and the proceeds used by Williams chiefly in the payment of debts, some of which had been contracted prior to the attempted secession. There was evidence also that there was no money in circulation at that time in New Orleans except Con-federate currency, and it was generally known that checks upon any bank in New Orleans would be paid in such money. I ruled

upon this evidence that the notes were not void for illegality or for want of consideration. But in order to present the question to the full court, the evidence was submitted to the jury for the purpose of a special finding thereon. A general verdict was rendered for the defendants. The special finding was as follows : ' *Question.* Whether it was the agreement or the understanding of the parties upon both sides, that the loan then to be made was a loan of Confederate notes or currency, as such ? *Answer.* Yes.' If the ruling was wrong, and the defendants were entitled to a verdict upon this ground, judgment is to be entered for them upon the verdict. The statutes and judicial decisions of Louisiana may be referred to."

*R. M. Morse, Jr., & W. P. Walley,* for the plaintiff. The Louisiana decisions, which avoid contracts founded on a consideration of Confederate money, all rest either on the ground that the so called Confederate government was not a government *de facto,* or on art. 127 of the Louisiana Constitution of 1868. But the supreme court of the United States, in *Thorington* v. *Smith,* 8 Wallace, 1, have held that a contract for the payment of Confederate money can be enforced, and thereby overruled such of them as rest upon the first ground. And the article of the Constitution of 1868 is void, for impairing the obligation of contracts.

The contracts now in suit cannot be avoided here on the ground that they were invalid by the law of Louisiana at the time when they were made, for that time was previous to the decisions first referred to. *McDonald* v. *Stewart,* 18 Louisiana Annual, 90. Those decisions do not involve the construction of the Constitution or statutes of Louisiana. Upon the question of the validity of Confederate money as consideration for a contract, they are not binding on this court. *Rowan* v. *Runnels,* 5 How. 134. *Ohio Insurance & Trust Co.* v. *Debolt,* 16 How. 416, 432. *Gelpcke* v. *Dubuque,* 1 Wallace, 175, 206. *City* v. *Lamson,* 9 Wallace, 477. *Folger* v. *Columbian Insurance Co.* 99 Mass. 267.

*A. A. Ranney,* (*C. A. Carpenter* with him,) for the defend ants, cited Louisiana Civil Code, arts. 1887, 1889, 2026 ; *Schmidt* v. *Barker,* 17 Louisiana Annual, 261 ; *Emerson* v. *Lee,* 18 Louisiana Annual, 134 ; *Garthwaite* v. *Wentz,* 19 Louisiana Annual,

196; *Huck* v. *Haller*, Ib. 257; *Washburn* v. *Offut*, Ib. 269 *King* v. *Huston*, Ib. 288; *Howard* v. *Kirwin*, Ib. 432; *Norton* v, *Dawson*, Ib. 464; *Parker* v. *Broas*, 20 Louisiana Annual, 167. Louisiana Const. of 1868, art. 127; *Barrow* v. *Pike*, 21 Louis· iana Annual, 14; *Bank of West. Tennessee* v. *Citizens' Bank of Louisiana*, Ib. 18; *Nelligan* v. *Citizens' Bank*, Ib. 332; *Foster* v. *Bank of New Orleans*, Ib. 338; *Wilder's Succession*, Ib. 371; *Bethel* v. *Hawkins*, Ib. 620; *Durbin* v. *Mitchell*, 22 Louisiana Annual, 132; *Bank of New Orleans* v. *Frantom*, Ib. 462; *Winter* v. *Jones*, Ib. 485; *Turner* v. *Beall*, Ib. 490; *Voinche* v. *Villemarette*, 23 Louisiana Annual, 227; *Bloom* v. *Dixon*, Ib. 265; *Baldwin* v. *Sewell*, Ib. 444; *Thorington* v. *Smith*, 8 Wallace, 1; *Chicago* v. *Sheldon*, 9 Wallace, 50, 55; *Bethell* v. *Demaret*, 10 Wallace, 537; *Ivey* v. *Lalland*, 42 Mississippi, 444; *Thomas* v. *Taylor*, Ib. 651; *Reavis* v. *Blackshear*, 30 Texas, 753; *McCartney* v. *Greenway*, Ib. 754 note; *Goodman* v. *McGehee*, 31 Texas, 252; *Thompson* v. *Houston*, Ib. 610; *Donley* v *Tindall*, 32 Texas, 43; *Hale* v. *Huston*, 44 Alab. 134; *Lawson* v. *Miller*, Ib. 616; *Robertson* v. *Shores*, 7 Coldwell, 164; *Wilkins* v. *Elkins*, 1 Heiskell, 88; *Latham* v. *Clark*, 25 Ark. 574; *Ford* v. *Ragland*, Ib. 612; *Woods* v. *Wilder*, 43 N. Y. 164; *Calfee* v. *Burgess*, 3 West Virg. 274; Story Confl. Laws, § 277; Wharton Confl. Laws, §§ 430, 776, and notes; *Passenger Cases*, 7 Pet. 283, 435; *Bulkley* v. *Honold*, 19 How. 390; *McCracken* v. *Hayward*, 2 How. 608, 612; Story on Contracts, § 1380; Cooley on Const. Limit. 285, 286, and notes.

GRAY, J. The notes in suit having been made and payable in Louisiana, the question of their validity depends upon the law of that state; if they were void by that law, they are void everywhere. Story Confl. Laws, § 243. 2 Kent Com. (6th ed.) 458. *Akers* v. *Demond*, 103 Mass. 318.

By the Civil Code of Louisiana, art. 2026, "every condition of a thing impossible, or *contra bonos mores*, or prohibited by law, is null, and renders void the agreement which depends on it." It was adjudged by the supreme court of Louisiana in 1865, that, by virtue of this article, a merchant, who had deposited money in a bank in New Orleans in 1862 "on condition that the amount

is to be drawn in Confederate money," could maintain no action against the bank; because the condition on which the deposit was received, and to which the plaintiff voluntarily assented, provided for and contemplated aiding the circulation of notes issued by rebels in arms against the United States, for the express purpose of facilitating and carrying on the rebellion, and which on their face, being payable in " six months after the ratification of peace between the Confederate States and the United States," anticipated and purposed a disruption and dismemberment of the general government. *Schmidt* v. *Barker*, 17 Louisiana Annual, 261. Presently afterwards, it was repeatedly and uniformly decided by the same court to be the established law of that state, that all notes and obligations, the consideration of which was a loan of Confederate currency, were void. 19 Louisiana Annual, 161, 164, 257, 269, 288, 359, 432, 464. 20 Ib. 37, 138.

The principle of these decisions was embodied in the Louisiana Constitution of 1868, art. 127 of which declared that " all agreements, the consideration of which was Confederate money, notes or bonds, are null and void, and shall not be enforced by the courts of this state." The subsequent decisions of the supreme court of Louisiana to the same effect are put upon the ground that the question was settled in the jurisprudence of the state, and not merely upon the constitutional provision. 21 Louisiana Annual, 14, 18, 620. 22 Ib. 142, 462, 485. 23 Ib. 265.

In one of these cases, which was a suit on a mortgage made in 1862 to secure the payment of promissory notes, the considera tion of which was a loan of Confederate currency, a writ of error was sued out to the supreme court of the United States, and was dismissed by that court, because the decision of the state court was not repugnant to the Constitution of the United States, but " simply held that the promissory notes, together with the mortgage in question, were nullities, on the ground that the Confederate currency, which constituted the consideration, was illegal according to the law of the state at the time the contract was entered into." *Bethel* v. *Hawkins*, 21 Louisiana Annual, 620 : *S. C. nom. Bethell* v. *Demaret*, 10 Wallace, 537. This judgment of the supreme court fully confirms the view that the decisions of

the Louisiana court declared the law of the state previously to and independently of the Constitution of 1868 ; for if those decisions had been based upon that Constitution, the question whether it impaired the obligation of contracts would have been subject to revision in the supreme court of the United States. *Railroad Co.* v. *McClure,* 10 Wallace, 511. And it is peculiarly significant in the light of the fact that the supreme court had previously decided, in a case which came up from a federal court in Alabama, that a contract, made in that state during the rebellion for the payment of a certain number of dollars, and shown to have been in fact made for the payment of that sum in notes of the so called Confederate States, might be enforced, and damages assessed at the value of those notes in lawful money of the United States at the time and place of the contract. *Thorington* v. *Smith,* 8 Wallace, 1.

We are not required to consider whether the decisions of the supreme court of Louisiana are or are not founded in reason. It is enough that they are conclusive evidence that by the law of that state, where the notes in suit were made and payable, and where both parties to this action resided, these notes never had any legal validity there, and consequently cannot be enforced in any other state or country. As this view is decisive of the case, it is unnecessary to pass upon the other questions which have been argued.     *Judgment on the verdict for the defendants.*[*]

---

[*] See *Hannauer* v. *Woodruff,* 10 Wallace, 482, and 15 Wallace, 439 ; *Bank of West Tennessee* v. *Citizens' Bank of Louisiana,* 14 Wallace, 9 ; *Delmas* v *Insurance Co.* Ib. 661 ; *Tarver* v. *Keach,* 15 Wallace, 67 ; *Planters' Bank* v. *Union Bank,* 16 Wallace, 483.