CASE 84—PETITION ORDINARY—FEBRUARY 4.

## Western Union Telegraph Co. v. Eubanks & Russell.

APPEAL FROM SIMPSON CIRCUIT COURT.

1. TELEGRAPH COMPANY—DELAYED MESSAGE—DAMAGES. —Where a telegraphic message to ship live stock on a certain day was not delivered within a reasonable time, and by reason of the delay the stock could not be shipped that day when it would have reached its destination while the market was good, but was shipped on a subsequent day, and reached there when the market had declined, the damages are not too remote or speculative to authorize a recovery.

2. TELEGRAPH COMPANIES—VALIDITY OF STIPULATIONS.—A stipulation of a telegraph company on the back of its printed blanks upon which messages are sent, that it shall not be liable for mistakes or delays, unless the message is repeated, is invalid.

3. SAME.—A stipulation that the company shall not be liable for damages if the claim therefor is not presented in writing, within sixty days after the message is filed with the company for transmission, is contrary to public policy, and violative of section 196 of the Kentucky Constitution.

4. CONSTITUTIONAL CONSTRUCTION.—Under the provisions of section 199 of the Kentucky Constitution, telegraph companies are to be

Western Union Telegraph Co. v. Eubanks & Russell.

treated as common carriers, and are not, therefore, permitted, under the provisions of section 196 of that instrument, to contract for relief from their common-law liabilitiy.

5. CONTRACTS—PLACE OF PERFORMANCE.—The law of the place where a contract is to be performed governs, subject to the rule that a. contract which is void by the law of the place where made, is void everywhere.

6. TELEGRAPH COMPANIES—STIPULATIONS AS TO CIPHER MESSAGES.— Public policy forbids that a telegraph company should be permitted, by contract to exempt itself from damages resulting from its negligence in transmitting cipher messages.

A. S. WALKER, GEO. HARRIS AND GEO. H. FEARONS FOF AP-- PELLANT.

1. The message was to all intents and purposes a cipher message and entirely obscure to all except the parties. The "eighty-five-dollar load" might have referred to anything else as well as to mules. Such messages should be repeated to insure accuracy, and, according to the contract, the company is not liable, unless they are. Primrose v. W. U. Tel. Co., 154 U. S., 1.

2. A telegraph company may limit the measure of its liability to a. reasonable extent.     (Express Company v. Caldwell, 21 Wall., 264; Kiley v. W. U. Tel. Co., 109 N. Y., 231; Camp v. W. U. Tel. Co., 1 Met., 164.)

3. The damages are entirely too remote and speculative to authorize a recovery.

RICHARDS, WEISSINGER & BASKINS ON SAME SIDE.

1. The failure to deliver the message did not necessarily cause the loss, if any. Appellees might not have shipped the mules if they had received the message promptly. The damages must be the immediate or approximate result of the negligence. (Hadley v. Baxendale, 9 Exch., 341; Squire v. Western Union Tel. Co., 98. Mass., 232 (93 Am. Dec., 160); Sedgwick on Damages, vol. 2 (8th ed.), sec. 888; McColl v. Western U. T. Co., 44 N. Y. Super Ct., 487; Smith v. W. U. Tel. Co., 83 Ky., 104; Chapman v. W. U. Tel. Co., 90 Ky., 265; Hall v. W. U. Tel. Co., 124 U. S., 444; W. U. Tel. Co. v. Smith, 76 Texas, 253; Beaupre v. Pacific & Atlantic. Tel. Co., 21 Minn., 155.)

2. A telegraph company is not a common carrier. (Camp v. W. U. Tel. Co., 1 Met., 164; Smith v. W. U. Tel. Co., 83 Ky.; Chapman v. W. U. Tel. Co., 90 Ky.; Express Co. v. Caldwell, 21 Wall., 269; Telegraph Co. v. Texas, 105 U. S., 460; Primrose v. W. U. Tel. Co., 154 U. S., 1.)

Western Union Telegraph Co. v. Eubanks & Russell.

3. Stipulation as to repeating the message valid. (Primrose v. W. U. Tel. Co., 154 U. S., 1, and authorities cited; Atkinson v. Blakemore, MS. opinion attached.)

4. Common carriers may limit their liability. (Adams Express Co. v. Guthrie, 9 Bush, 80; Express Co. v. Caldwell, 21 Wall., 264; Hart v. Penn. R., 112 U. S., 331.)

5. Rule as to obscure or cipher messages is valid. (Primrose v. W. U. Tel. Co., 154 U. S., 1, and cases cited.)

6. Stipulation requiring written claim for damages to be presented within sixty days is enforceable. (Kenton Ins. Co. v. Downes, 90 Ky., 236; Express Co. v. Caldwell, 21 Wall., 264; Thompson on Law of Electricity, secs. 245, 247; Young v. W. U. Tel. Co., 65 N. Y., 163; Wolf v. Same, 62 Pa. St., 83; 1 Am. Rep., 387; W. U. Tel. Co. v. Meredith, 95 Ind., 93; Same v. Jones, 95 Ind., 228; 48 Am. Rep., 713; Gray on Telegraphs, sec. 34; Beasley v. W. U. Tel. Co., 39 Fed. Rep., 181; Telegraph Co. v. Rains, 63 Tex., 27; W. U. Tel. Co. v. Dougherty, 54 Ark., 221; 26 Am. St. Rep., p. 33; W. U. Tel. Co. v. McKinney, 5 Texas Law Rev., 173; 8 Am. & Eng. Corp. Cases, 176; W. U. Tel. Co. v. Yopst, 118 Ind., 248; Massengale v. W. U. Tel. Co., 17 Mo. Appeal Rep., 257; W. U. Tel. Co. v. Trumbull, 27 N. E. Rep., 312; Sherill v. W. U. Tel., 109 N. C., 137; 14 S. E. Rep., 94; W. U. Tel. Co. v. Beck, MSS. opinion attached; Appellate Court, First District, Illinois.)

GOODNIGHT & ROARK AND SIMS & COVINGTON FOR APPELLEES.

1. Telegraph companies transacting business in this State are expressly made and declared to be common carriers by sec. 199 of the Kentucky Constitution.

2. A common carrier can not by contract limit or restrict its liability for negligence. (L. & N. R. Co. v. Owen, 93 Ky., 201; Smith v. W. U. Tel. Co., 83 Ky., 104.)

3. The stipulation in the printed blank that an itemized statement of damages, in writing, should be furnished the company in sixty days, is unreasonable, void and against public policy. In the States and courts where such stipulations have been upheld, it has been done upon the idea that telegraph companies were not common carriers, but in Kentucky they are expressly made so by constitutional provision (sec. 199). Besides this, there is a Kentucky statute, which makes telegraph companies answerable for their negligence in failing to promptly transmit and deliver messages for pay. (McKibben v. W. U. Tel. Co., 14 N. E. Rep.,894, and 114 Ind., 511.)

But this stipulation was waived by appellant's agent, who was notified promptly of the claim, and assured appellees the com-

pany had been notified and would settle the claim, and asked them not to bring suit. (Hill v. W. U. Tel. Co. (Ga.), 11 S. E. Rep., 874.)

4. The negligence in this case was the direct and proximate cause of the damages. The damages are such as the parties may fairly be supposed to have considered, or at least would have considered as flowing from the breach of the contract, if they had been informed fully of the facts. (Smith v. W. U. Tel. Co., 83 Ky., 104, and authorities cited; Leonard v. Tel. Co., 41 N. Y., 544.)

RICHARDS, BASKIN & RONALD IN PETITION FOR REHEARING.

1. Plaintiffs sued to recover damages alleged to have been caused by delay in delivering a telegram which prevented them from shipping on December 21, 1893, a car load of mules, which they then owned, and have been permitted to recover speculative damages upon an entirely different car load of mules, which they purchased after the telegram was delivered, as shown by the personal testimony of each plaintiff.

2. The stipulation that "the company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission," does not affect the statute of limitations, is not against public policy nor in violation of sec. 196 of the Kentucky Constitution, prohibiting contracts limiting the common-law liability of carriers. The authorities in support of this are practically unanimous.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

It is substantially alleged in the petition in this action that appellees were partners in the live stock business and that appellant was a common carrier of messages and telegrams. That on the 21st December, 1893, plaintiff's agent, H. P. Russell, at Atlanta, Georgia, delivered to defendant to be transmitted to plaintiff at Franklin, Ky., the following telegram or message, viz:

Atlanta, Ga., Dec. 21, 1893.

J. W. Russell, Franklin, Ky.:

Ship to-day eighty-five dollar load, will make money feeling good.          H. P. RUSSELL.

for which message defendant received pay and undertook and agreed to transmit same to plaintiff at Franklin, Ky. That the same was received by defendant at Atlanta in ample time to be transmitted to plaintiff—in ample time for them to have shipped the car load of mules on that day to Atlanta, but said message or telegram was not delivered to plaintiff until too late to ship said mules. That it was not delivered to plaintiff until after dark, about seven o'clock, when it could have been delivered early in the morning on said day and it could easily have been delivered in time for plaintiff to have shipped said car load of mules on that day; but defendant through the negligence and incompetency of its agents, employes and operators then in its employment and in charge of and operating its line and business failed to deliver said message until seven o'clock and after dark of said day. The said failure to deliver the message in time was caused alone by the negligence and incompetency of defendant's agents and employes.

That if they had received said telegram at the time it should have been delivered, they could and would have shipped said car load of mules, twenty-five in number, to Atlanta, Ga., and said mules would have arrived in Atlanta, Ga., at a time when the market was high and good, that they could and would have sold said car load of mules, if same had been shipped on day telegraphed for, for $250 more than they could and did sell them for when shipped later. That if said mules had been shipped on December 21, they would

have arrived in Atlanta, on December 23, 1893, when the market was good and when they could and would have sold said mules for a good price; but by the negligence of defendant's agents and employes they were thus prevented from shipping and said mules did not get to Atlanta till the following Tuesday, when the market had declined.

That they have been damaged by defendant's negligence in the sum of $250, for which sum judgment was prayed.

The first paragraph of the answer may be taken as a denial of all the averments contained in the petition, including a denial of the charge, that appellant was a common carrier, but does not deny that it is a corporation engaged in transmitting messages and that it can sue and be sued.

It is averred in the second paragraph that appellant received of H. P. Russell individually not as agent for plaintiff at one o'clock and five minutes, December 21, 1893, the message heretofore copied except the word "the" before eighty, and files the original message marked "A." It is further averred that in receiving and transmitting messages with the best of operators and under the most favorable circumstance there is always some liability and probability of mistake and especially as in this case when the message had to be transmitted several hundred miles and through relay offices. That mistakes and delays are inseparable from the nature of the business. That H. P. Russell when he delivered the said message to defendant to be sent

as aforesaid requested defendant to send said message subject to the terms on the back thereof, which he then agreed to and he was directed on the face of said message to "read the notice and agreement on the back," which notice and agreement solemnly signed and made by him is in the following words, viz.:

"All messages taken by this company are subject to the following terms:"

"To guard against mistakes or delays, the sender of a message should order it repeated; that is telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any unrepeated message, beyond the amount received for sending the same; nor for any mistake or delay in the transmission or delivery or for non-delivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured, nor in any case for delays arising from unavoidable interruptions in the working of its lines, or for errors in cipher or obscure messages;" "and this company is hereby made the agent of the sender, without liability to forward any message over the lines of any other company when necessary to reach its destination. Correctness in the transmission of a message to any point on the lines of this company can be insured by contract in writing, stating agreed amount of risk, and payment of premium thereon, at

the following rate in addition to the usual charge for repeated messages, viz.: one per cent. for any distance not exceeding 1,000 miles, and two per cent. for any greater distance. No employe of the company is authorized to vary the foregoing."

"No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender."

"Messages will be delivered free within the established free delivery limits of the territorial office." "For delivery at a greater distance, a special charge will be made to cover the cost of such delivery.

"The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission."

It is alleged that all the foregoing was legible and plain and so far as it could apply to the sending of the message was agreed to by H. P. Russell and that he did not request that the message be repeated, but assumed the risk of mistake and delay, and paid only fifty-eight cents for the transmission, which was the usual charge for such messages not repeated.

It is further alleged that no claim in writing has ever been presented to defendant for damages, unless this suit be so considered. The suit was filed more than sixty days after the filing of the message. That the message by some mistake was received at the Franklin

office as to J. A. Russell at 2:05 p. m., and was immediately sent out by the messenger boy to be delivered to J. A. Russell, but he could not be found, and about 6 p. m. on the suggestion of some one acquainted with the people of Franklin the message was delivered to J. W. Russell. It is also alleged that when J. W. Russell received the message that he received notice of the contract, as before set out and all the foregoing facts are pleaded in bar of plaintiff's claims but appellant admits that plaintiff or at least J. W. Russell is entitled to fifty-eight cents. That getting the word J. A. instead of J. W. caused the delay in the delivery of the message.

In appellant's amended answer it is alleged that if the message had been promptly delivered that appellees could not have shipped the mules on that day. That they had no mules in or near Franklin on that day, but did get the message in time to have shipped the mules on the next day.

Appellees reply may be considered a denial of all the averments in the answer and amended answer and it is also alleged that appellant had at Franklin an incompetent agent on that day; that he was merely a cub and unacquainted with the local business of appellant. Appellees also denied that H. P. Russell ever agreed to the stipulation on back of the message, and also alleged that the same was null and void and against public policy.

The reply was traversed by appellant.

Appellees were permitted to amend their reply and

in it a waiver of the sixty days' notice was pleaded and the said plea was traversed by appellant.

A trial resulted in a verdict and judgment in appellees' favor of $125. Appellant's motion for a new trial having been denied it prosecutes this appeal.

The first and second grounds for new trial need not be noticed. The third ground is that the verdict is not sustained by sufficient evidence and is contrary to law. There was proof introduced by appellees conducing to show that they had a load of mules at the time which they could and would have shipped to Atlanta 21st December, 1893, if the message had been delivered to J. W. Russell within a reasonable time after it reached Franklin and that they sustained a loss by reason of not shipping the mules on that day to the amount of more than $125; hence, the jury were authorized to find the amount named. This case is unlike the case of Smith v. this appellant, reported in 83 Ky., 104. The damages in this case at bar were not remote or speculative in a legal sense.

Instructions Nos. 1, 2, 3, and 4 given by the court were as favorable to appellant as it was entitled to and if this be true then the instructions asked by appellant were properly refused by the court.

It is very ably argued by appellant's counsel that the printed terms on the back of the paper on which the message was sent were assented to by the sender and therefore became part of the contract and binding upon the sender and receiver and it is especially insisted that the stipulation as to repeating the message is a com-

plete bar to a recovery of more than fifty-eight cents, the amount paid for the sending of the message, and we are referred to various decisions of courts of last resort in support of that contention.

It is true that in Camp v. this appellant, 1st Metcalfe, 164, the same or a similar stipulation as the one in questian as to the repetition of messages was held to be valid, but that case was decided in 1858, and before the adoption of the present constitution, and it will also be seen that there was no allegation by plaintiff that the mistake was the result of negligence or want of competency or skill on the part of the employes of the company, hence, that case is wholly unlike the case at bar.

The decision of the Supreme Court in Primrose v. Western Union Telegraph, 154 U. S., 1, is also relied on by appellant. It is true that that decision upheld the stipulation in question as well as the stipulation in regard to cipher messages and obscure messages, but it is also true that Chief Justice Fuller and Mr. Justice Harlan dissented and Mr. Justice White took no part in the decision. It will also be seen from the opinion that many courts of last resort had decided otherwise as to such stipulations. We quote as follows from the opinion in the cases *supra.* "There are cases, indeed in which such regulations have been considered wholly void. It will be sufficient to refer to those specially relied on by the learned counsel for the plaintiff, many of which however, upon examination, appear to have been influenced by considerations which have no applica-

tion to the case at bar; some of them were actions brought by the receiver of the message, who had no notice of the printed conditions until after he received it, and could not therefore have agreed to them in advance; such were New York & Washington Tel. Co. v. Drury, 35 Penn. St., 298; 25 La., 383; 9th Phila., 88."

It would seem from the foregoing that if the suit had been by the receiver, as in the case at bar, that the court would probably have held the stipulation in question invalid.

In Smith v. appellant, 83 Ky., 112, decided before the adoption of the present constitution, this court in discussing the obligations of the Telegraph Company, said: "It is, however, a public agent; it exercises a *quasi* public employment; carefulness and fidelity are essentials to its character as a public servant, and public policy forbids that it should abdicate as to the public by contract with the individual. He is but one of millions; his business will perhaps not admit of delay or contest in the courts and he is *ex necessitate* compelled to submit to any terms which the company might see fit to impose; but the law should not uphold a contract under which a public agent seeks to shelter itself from the consequences of its own wrong and neglect. Its liability for neglect is not founded purely upon contract. It is chartered for public purposes; extraordinary powers are, therefore, conferred upon it; it has the power of eminent domain; if it did not serve the public it could not constitutionally lay a wire over a man's land without his consent; and by reason of

the gift of these privileges it is required to receive and
transmit messages, and is liable for neglect, independ-
ent of any express contract. The public are com-
pelled to rely absolutely upon the care and diligence
of the company in the transaction of this business so
wonderful in its growth, so necessary to the life of com-
merce and useful beyond estimate; and if it relies upon
a notice or contract to restrict its liability it must
be one not in violation of public policy; and in view of
the vast interests committed to a telegraph company,
the extraordinary powers given it and the virtual mon-
opoly it almost necessarily enjoys, the court should
compel it *nolens volens* to perform the corresponding
duties of diligence and good faith to the public thereby
created. Any other rule would defeat the very pur-
poses for which these companies are chartered, to-wit:
the safe and speedy transmission of messages for the
public; and while they may reasonably restrict their
liability yet they can not do so as against their own
negligence. They undertake to exercise a public em-
ployment which in many respects is analogous to that
of a common carrier and they must therefore bring
to it that degree of skill and care which a prudent man
would under the circumstances exercise in his own af-
fairs; and any stipulation by which they undertake to
relieve themselves from this duty or to restrict their
liability for its non-use, is forbidden by the demands of
a sound public policy. To hold otherwise would arm
them with a very dangerous power and leave the pub-
lic comparatively remediless. (W. U. T. Co. v. Fon-

taine, 58 Ga., 433; Wolf v. Western, etc., 62 Pa., 83; Sweetland v. Illinois, etc., 27 Iowa, 432; Breese v. U. S., etc., 48 N. Y., 132; H. S. T. Co. v. Gildersleeve, 29 Md., 232; West. Union v. Buchanan, 35 Ind., 429; Hibbard v. Western Union, 33 Wis., 558; Telegraph Co. v. Griswold, 37 Ohio, 301; Tyler v. West. Union, etc., 60 Ill., 421; Ellis v. The American T. Co., 13 Allen, 234.)"

It is often of the utmost importance to the sender or receiver of messages that the same should be in cipher or obscure because if sent in plain language the contents would often become known and the object in view defeated; hence, public policy forbids that appellant should by any contract exempt itself from the damages resulting from its negligence in transmitting such messages. It is the province of the law making power to prescribe the limit in which an action may be brought; hence, the limitation of sixty days if not an attempt to vary the statute of limitation would if enforced have that effect and in this case the requirement that the demand should be made in writing is clearly unreasonable and contrary to public policy and is in violation of section 196 of the Constitution. A contract that notice or demand of a claim for damages should be given in a reasonable time and if not given that fact to be taken as *prima facie* evidence of the invalidity of the claim, might be upheld.

The real question in this case is as to the negligence of the appellant, and if the injury was caused by the negligence of appellant no contract or agreement can bar a recovery.

Appellant contends that section 199 of the State Constitution could not make telegraph companies common carriers. It is not necessary to discuss the question of fact as to whether said section did in fact cause such companies to become common carriers, for it is evident that by the provisions of said section they are to be treated as such carriers, and therefore, come within and are bound by the provisions of section 196, which provides that no common carrier shall be permitted to contract for relief from its common law liability. Nor is that section of the constitution in conflict with the interstate commerce clause of the constitution. A fuller discussion of the section *supra* may be found in O. & M. Ry. Co. v. Tabor, 98 Ky., 503. The general rule is that the law of the place where the contract is to be performed governs, subject, of course, to the rule that a contract which is void by the law of the place where made is void everywhere. (Story's Conflict of Laws, Sec. 243; Lawson's Remedies & Proceedings, 7th Ed., Sec. 3873.)

The proof in this case as to the negligence was sufficient to sustain the verdict and no error of law to the prejudice of appellant's substantial rights having occurred on the trial, the judgment of the court below is affirmed.