## Orr's Administrator, et al v. Orr, et al.

(Decided February 24, 1914.)

Appeal from Calloway Circuit Court.

1.   Contracts—Foreign Corporation—Law of Tennessee.—Where a foreign corporation does business in Tennessee without having complied with the statute requiring it to file with the Secretary of State a copy of its charter, its contracts cannot be enforced.

2. Corporations—Foreign Corporation—Unlawfully Doing Business in State—Validity of Contract—Evidence.—In an action on a note where the maker defended on the ground that it was executed to a foreign corporation for business done in the State of Tennessee contrary to the law of that state, evidence examined and held to show that the payee was doing business in that state.

3. Interstate Commerce—What Constitutes.—Where a foreign corporation sends its products to an agent in Tennessee to be sold and delivered by him to purchasers, such articles, when delivered to the agent, are no longer interstate commerce.

4. Conflict of Laws—Promissory Note—Void Where Made Payable Elsewhere.—Where a note is executed in another state and grows out of a past transaction occurring in that state and prohibited by the laws thereof, and is, therefore, illegal and void under the law of that state, it will not be enforced here, though made payable in another state.

THOS. P. COOK for appellants.

COLEMAN & WELLS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On December 19, 1906, the J. R. Watkins Medical Company, a Minnesota corporation, engaged in selling certain medicines and proprietary articles, appointed C. W. Nance its traveling salesman for Montgomery County, Tennessee. Under the contract C. W. Nance was to sell the medicines and other articles, and pay to the J. R. Watkins Medical Company one-half of the cash collections, and retain the other half for his services. He also agreed to be liable for amount of articles sold and not collected. As a part of the contract he executed a bond for its faithful performance, with E. O. Orr and L. I. Nance as sureties. C. W. Nance went to Montgomery County, Tennessee, and proceeded to sell the articles referred to until January 15, 1908, when he executed another another contract similar to the first, with L. I. Nance, E. O. Orr and J. W. Nance as sureties. Nance continued to work under this contract until about March 1, 1909. During his term of service he had sold articles to the amount of $668.01, which sum he had been unable to collect. About this time C. W. Nance quit traveling for the J. R. Watkins Medical Company. On February 16, 1909, L. I. Nance, E. O. Orr and J. W. Nance executed their promisory note to the J. R. Watkins Medical Com-

pany for $668.01. This note was renewed on June 16, 1909, and the interest, amounting to $13.36, paid. The original and renewal notes were both dated at Winona, Minnesota, and made payable at that point.

E. O. Orr, one of the makers of the note, died in January, 1911, intestate, and a resident of Tennessee. He left surviving him a widow and several infant children. At the time of his death E. O. Orr owned certain real estate in Calloway County, Kentucky. In May, 1911, W. B. Graham was appointed by the Calloway County Court administrator of E. O. Orr. Thereafter the administrator brought this action for a settlement of the estate. The case was referred to the master commissioner to hear proof and report on claims. Among the claims filed was the note for $668.01, dated June 16, 1909. The claim was allowed, but subsequently the infant children of E. O. Orr filed exceptions to the commissioner's report, which were sustained, and the claim disallowed. The J. R. Watkins Medical Company appeals.

The only exception which we deem it necessary to consider is that relating to the validity of the note. It is proven that under the statutes of Tennessee every foreign corporation is required to file a copy of its charter with the Secretary of State, and it is unlawful for it to do or attempt to do any business in the State until it shall have complied with the Statute. It further appears from the proof that these statutes have been construed in a number of cases, and it has been uniformly held that where a corporation does business in that State without complying with the statute, all contracts growing out of such business are illegal and void. State v. Phoenix Insurance Co., 8 Pickle (Tenn.), 420; Lombard Lumber Co. v. Thomas, 8 Pickle, 593; Haworth v. Montgomery, 7 Pickle, 16; Stevenson v. Ewing, 3 Pickle, 46; Insurance Co. v. Kennady, 12 Pickle, 711; American Steel & Wire Co. v. Speed, 110 Tenn., 524; Louisville Property Co. v. Mayor, &c., 114 Tenn., 213. It is also shown that appellant had not complied with the statute.

To overcome the effect of the Tennessee law it is first insisted by the appellant that it was not doing business in the State of Tennessee. In this connection our attention is called to the fact that appellant's officers and L. I. Nance both stated that the latter purchased the goods from appellant f. o. b. cars at Winona. It is,

therefore, argued that the title of the goods passed to Nance as salesman, and that in soliciting orders in Tennessee he simply sold his own goods and did no business for appellant. These witnesses, however, were testifying merely as to their construction of the written contract. By the contract itself C. W. Nance was appointed by appellant "as a traveling salesman for its products in the County of Montgomery, State of Tennessee." There is a further provision of the contract that appellant "agrees to take back all goods left in the possession of the traveling salesman at the time he quits work." The contract also reads "If at the expiration of the services of said traveling salesman," etc. On the back of the contract is a provision to the effect that the traveling salesman is to "begin as soon as practicable after the goods is received, and to work continuously at the agency." The evidence further shows that appellant's manager at Memphis, in a letter to C. W. Nance, referred to Nance not as purchaser, but as appellant's agent. The letter also refers to the fact that the privilege tax due the State of Tennessee had been paid and $50 of this amount was charged to Nance. Considering these facts and others which might be mentioned, there is no escape from the conclusion that appellant was doing business in Tennessee, and that Nance was not a mere purchaser of its products, but represented it as its agent.

Nor is there any merit in appellant's plea that the transaction out of which the debt arose was interstate commerce, and that the note was binding although the appellant had not complied with the laws of Tennessee. These products were not ordered by mail and shipped direct to its customers. As a matter of fact they were shipped to Memphis, and from there distributed to its agent. Nance and his brother say that he never ordered any goods except from Memphis. Appellant's witnesses say that the goods were billed to Nance in Minnesota, and were merely sent to Memphis for distribution. Even if there be any doubt as to whether or not the interstate journey ended at Memphis, the interstate journey certainly ended when the goods were delivered to Nance. Upon their delivery to Nance their interstate character ceased. From that time on Nance, as appellant's agent, proceeded to sell and deliver the goods in

Tennessee. Under the facts, the defense of interstate commerce is not available.

But it is further contended that the note sued on, though executed in Tennessee, is made payable in Minnesota, and was accepted there after investigation of the responsibility of the parties, and is, therefore, to be regarded as a Minnesota contract. It may be conceded that for many purposes the law of the place of payment of a note ordinarily controls, but this rule is subject to exceptions. . For instance, the question of the validity of a contract as affected by the legality of a past transaction in consideration of which it is made, and in which it took its inception . as a contract is generally held to be governed by the law of the place where the transaction was had, and not where the contract was executed or to be performed American and English Ency. of Law, 2nd Ed., Vol. 22, 1328; Akers v. Demon, 103 Mass., 323; McIntyre v. Parks, 3 Metc. (Mass.), 207; Winward v. Lincoln, (R. I., . 1902.); 51 Atl., 106. In the present case the note was never negotiated. The action is between the original parties. No. question of *bona fide* holder for value is presented. The note was given for money alleged to be due appellant on business done by it in Tennessee in violation of law. It therefore grows out of a transaction prohibited by law, and the note not only having been executed in Tennessee, but the transaction itself having taken place there, the law of the place where the transaction was had and the note executed controls, instead of the place of payment. Contracts are generally held to be void and illegal everywhere if void and illegal by the law of the place where made, and particularly is this true where the contract grows out of a past transaction prohibited by the laws of the State where the transaction took place, and the place of the transaction and the execution of the note are the same. Story on Conflict of Laws, Sec. 243; Hyde, &c. v. Goodnow, 3 Comst. (N. Y.), 266; Ross' Remedies & Proceedings, 7th Ed., Sec. 3873; Western Union Tel. Co., v. Eubanks, &c., 100 Ky., 591; Ford v. Buckeye State Ins. Co., 6 Bush, 133. As well said by Mr. Justice Story: "If void in its origin, it seems difficult to find any principle upon which any subsequent validity can be given to it in another

country.'' It follows that the note sued on was properly disallowed as a claim against the decedent's estate. This conclusion makes it unnecessary to discuss the other questions raised.

Judgment affirmed.