## Barnes v. Maxwell Motor Sales Corporation.

(Decided November 24, 1916.)

Appeal from Ohio Circuit Court.

Corporations—Foreign Corporations—Service of Process—Agent.—
A foreign corporation agreed to sell and furnish its automobiles

f. o. b. Detroit, Michigan, to a retail firm in Kentucky at certain discounts from list prices. Terms of payment were cash, or sight draft against bill of lading. Title to the property was to remain in the corporation until paid for. On expiration of the contract the corporation reserved the right to take back at invoice prices any goods purchased by the local firm which were not disposed of. The local firm was to pay all taxes on the goods on hand. It and the corporation were to share the cost of advertising. Held, that neither member of the local firm was the agent of the corporation within the meaning of the statute providing for service of process on foreign corporations.

ERNEST WOODWARD for appellant.

H. P. TAYLOR for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, W. O. Barnes, brought this suit against the Maxwell Motor Sales Corporation to recover the sum of $50.00, which he had deposited with the defendant to guarantee the payment of automobile parts ordered by him for the purpose of repairs, and also to recover damages aggregating $564.00 for breach of contract. Summons was issued and served on J. H. B. Carson as agent of the defendant in Ohio county. Without entering its appearance for any other purpose, the defendant moved to quash the return on the summons. In support of this motion it filed the affidavit of its secretary, Carl H. Pelton, and a copy of the contract between it and the Hartford Motor Company, a partnership conducted by J. H. B. Carson and A. E. Pate. The lower court sustained the motion to quash, and plaintiff electing to stand by the process, his petition was dismissed. Plaintiff appeals.

Pelton's affidavit is in substance as follows: The Maxwell Motor Sales Corporation was organized under the laws of Delaware. Its principal place of business is in Detroit, Michigan. It is qualified for doing business in Michigan and other states of the Union, but is not qualified for doing business in Kentucky. The only business done by the defendant in Kentucky is an interstate business. It maintains no office in Kentucky and has no warehouse nor storage point therein and makes no sales therein. Its traveling salesmen, who report to its executive offices in Detroit, go into Kentucky and make con-

tracts and take orders for the sale of its cars to citizens of Kentucky, which contracts and orders are not binding until accepted at the company's home office in Detroit. J. H. B. Carson is not an agent of the Maxwell Motor Sales Corporation, but, together with A. E. Pate, is a partner in the firm known as the Hartford Motor Company. The Hartford Motor Company is a dealer in Hartford, Kentucky, who, by contract with the Maxwell Motor Sales Corporation, purchased Maxwell motor cars and re-sells them in Kentucky. Neither Carson nor Pate sells cars for the Maxwell Motor Sales Corporation on commission, nor represent it in the sale of cars. They merely purchase cars from the Maxwell Motor Sales Company, their orders therefor being subject to approval at the Maxwell Company's office in Detroit. They do not have in their possession any property of the Maxwell Company and are not empowered to make any contract on behalf of that company, or do anything in connection with the Maxwell Motor cars other than to sell to their own customers cars which they have previously bought from the Maxwell Company and paid for.

The contract between the Maxwell Motor Sales Corporation and the Hartford Motor Company is denominated a "Distributer's Agreement." By the contract the distributer orders and purchases, F. O. B. Detroit, Michigan, twelve Maxwell automobiles, to be delivered in certain months. The list prices of the various machines are set forth in the contract and are billed to the distributer with certain percentages off the list prices. The terms of payment on automobiles are cash in advance, or sight draft against the bill of lading with collection charges added. On Maxwell parts and purchases of parts for obsolete models the distributer is allowed a discount of 20 per cent. He is also allowed a cash discount of 10 per cent. from the net prices of all repair parts purchased by him, provided the payment therefor is made in cash on or before the twentieth day of the month following the shipment. All invoices on said parts are due thirty days after date of shipment. In case they are not promptly paid, the company reserves the right to ship C. O. D.

The distributer is granted the right to sell Maxwell automobiles in Ohio county. He also has the right of exclusive sale on repair parts for "Model 25," but the company reserves the right to sell repair parts for all other

models. Should the company make such sales, it will protect the distributer in his commission. The distributer is required to make a deposit with the company to secure the payment of his repair parts account. He is required to take and pay for the cars specified in the contract, settle his parts account each month, make weekly reports of sale, do the advertising required by the contract, keep on hand a stock of parts specified therein and perform all the conditions of the agreement to the satisfaction of the company. He is also required to provide facilities for the proper handling, repairing and adjusting, at reasonable charges, of all Maxwell cars in said territory, and to inspect, free of charge and at least once in each month, any Maxwell car which the owner brings to the distributer's place of business.

The distributer also obligates himself to secure dealers in such cities and towns within his territory as will, in the judgment of the company, cover said territory. If he fails to do so, the company may procure dealers itself and declare that portion of the territory released from the agreement.

The distributer is prohibited from soliciting orders for cars outside of his own territory. If, however, he makes a sale within his territory to a resident of any other territory, he must account to the distributer in whose territory the purchaser resides for one-half of the commission. In no event, however, is the company to be liable for such commission.

At the termination of the agreement the company agrees to purchase from the distributer all new repair parts in good condition purchased by the distributer from the company under the contract, the distributer to pay the transportation charges on such parts to the nearest Maxwell Service Station.

The company is not liable to the distributer for any loss or damage to automobiles while the same are in the custody or possession of any common carrier in transit, but such loss shall be borne by the distributer. As part of the expenses of his business, the distributer is required to pay any tax that may be levied upon such business or any automobiles or parts that may be in his possession.

The cost of advertising is divided between the company and the distributer. The advertising is prepared by the company. The advertising shall cost not less than

$36.00 nor more than $60.00, without additional authority from the company.

Each purchaser from the distributer is given the standard warranty of the National Automobile Chamber of Commerce.

The title to each and every automobile and parts thereof shall remain in the company until the same are paid for in cash.

The agreement continues until June 30th, 1916, but either party is given the right to cancel the agreement at any time upon written notice, by registered mail or otherwise, to the other party. Such cancellation operates as a cancellation of all orders for automobiles or parts thereof which may have been received by the company from the distributer prior to such cancellation. In the event of such cancellation, the company reserves the right, at its option, to purchase at invoice prices all automobiles which are the property of and in the possession of the distributer. The agreement contains a further stipulation to the effect that it is understood between the parties that the distributer is in no sense the representative or agent of the company and has no right or authority from it to assume or create any obligation of any kind on its behalf, or to bind it in any respect whatsoever.

The process in this case was not served on any one of the company's special agents sent into the state for the purpose of taking orders for automobiles and transmitting them to the company for its approval. That being true, the rule that process may be served on such an agent, although the business transacted may be entirely of an interstate character, as announced in the case of International Harvester Company v. Commonwealth, 147 Ky. 655, and subsequently approved on writ of error to the U. S. Supreme Court, 234 U. S. 579, does not apply.

Here the process was served on J. H. B. Carson, one of the members of the partnership doing business under the firm name of the Hartford Motor Company. Therefore, the validity of the process depends on whether or not Carson was the agent of the defendant, Maxwell Motor Sales Corporation.

In support of the proposition that Carson was the agent of the defendant, the argument is as follows: The contract gave to Carson the exclusive rights to sell de-

fendant's automobiles and parts in Ohio county, and further provided that if the defendant itself sold repairs or machines to parties in Carson's territory Carson should be paid a commission on such sales. The title to all machines furnished under the agreement remained in the defendant until paid for, but Carson was required to pay the taxes. The cost of advertising was divided between the parties and the amount thereof fixed. Carson was required to make weekly reports of the property sold and of the property on hand, and to keep on hand and exhibit certain specified articles. He was also obligated to secure sub-dealers, who should be satisfactory to the defendant and whose contracts should be on the forms prepared by the defendant, subject to its approval. Upon the termination of the contract defendant reserved the right to take back at invoice prices all parts or automobiles which plaintiff owned and had on hand. Either party had the right to cancel any portion of the orders for machines or parts, or the entire contract, by giving written notice to the other in writing.

In the case of Three States Buggy & Implement Co. of Cairo, Ill. v. Commonwealth, 105 S. W. 971, the question was whether the appellant was doing business in the state in violation of the Kentucky Statutes, section 571, requiring every foreign corporation having a place of business in the state to file with the Secretary of State a statement, naming its agents thereat upon whom process may be served. Under the contract in that case the appellant agreed to furnish its goods, F. O. B. Cairo, Illinois, to a retail firm in this state, the latter to pay for such goods as it sold on specified terms. Appellant also agreed to carry over or take up such goods as were not sold at the expiration of the contract, provided they were delivered to it in good condition F. O. B. Cairo, Illinois. The firm agreed to keep the goods insured in favor of the appellant. It was held that the contract did not make the firm the corporation's agent, but merely provided for a series of sales upon the terms set out therein, and that the appellant was not doing business in the state in violation of the statute.

In the case of Mikolas v. Hiram Walker & Sons, 73 Minn. 305, 76 N. W. 36, it was held that a person is not an agent within the meaning of the statute authorizing service of process upon foreign corporations, where the

relation of the person served with the process to the foreign corporation is that of wholesaler and manufacturer, doing business under a contract by which the manufacturer agrees to sell his goods only to such wholesaler, who in turn is to buy them exclusively from the manufacturer, and to sell at prescribed prices fixed by the latter, in consideration of which the manufacturer agrees to give the wholesale dealers certain rebates.  Again, in the case of Gottschalk v. Distilling & Cattle Feeding Company, 50 Fed. 681, it was held that a foreign corporation is not doing business in the state so as to render it subject to service of process therein, by selling its products to certain persons in the state for distribution, who are styled distributing agents, where the contract with these purchasers was that they should buy exclusively from the foreign corporation such goods as it manufactured, and should sell them at trade prices established by it.  Among the cases sustaining the rule above announced are the following:  Wasey v. Whitcomb, 167 Mich. 58, 132 N. W. 572; Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. ed. 1093.

In the case under consideration the automobiles and parts thereof were actually sold to the Hartford Motor Company.  It was none the less a sale because the title thereto was to remain in the defendant until the goods were paid for, or because the defendant reserved the right, at the termination of the contract, to take the goods back at invoice prices.  The defendant did not agree to do, nor did it actually do, any of the business of receiving, storing and selling the goods in Ohio county.  The purchasers of the goods were purchasers from the Hartford Motor Company and were solicited and secured by it alone.  They were its customers and liable to it for the purchase price of the goods.  In all their dealings with such customers the members of the partnership acted for themselves and not for the defendant.  We, therefore, conclude that neither member of the firm of the Hartford Motor Company was an agent within the meaning of the statute authorizing service of process upon foreign corporations.

A different rule prevails in this jurisdiction where the contract itself describes the local dealer as agent, and the other provisions of the contract, considered in the light of this circumstance, are sufficient to show that an

agency in fact was contemplated by the parties. Commonwealth v. Parlin & Orendorff, 118 Ky. 168, 80 S. W. 791; Orr's Admr. v. Orr, 157 Ky. 570, 163 S. W. 757.

Judgment affirmed.