**Wilbur POST, Appellant,**

**v.**

**AMERICAN CLEANING EQUIPMENT CORPORATION, Appellee.**

Court of Appeals of Kentucky.

Oct. 18, 1968.

As Modified on Denial of Rehearing Feb. 14, 1969.

Michael M. Hellmann, Louisville, for appellant.

R. I. McIntosh, Robert C. Hobson, Woodward, Hobson & Fulton, Louisville, for appellee.

DAVIS, Commissioner.

Wilbur Post sustained personal injuries when the fan (impeller) of an industrial vacuum cleaner disintegrated while he was using it in the course of his duties at the Crescent Hill Pumping Station of the Louisville Water Company. The cleaner had been furnished to the water company by a local dealer for appellee. A jury returned a verdict in favor of appellee in Post's suit. Post contends (1) that he was entitled to a directed verdict; (2) alternatively that it was error to give a contributory negligence instruction; and (3) that the court improperly refused instructions tendered by Post.

The appellee counters by urging that its motion to quash the service of summons should have been sustained because it was not doing business in Kentucky within the purview of KRS 271.610(2); additionally, the appellee maintains that it was entitled to a directed verdict anyway, but urges that the assignments of error presented by appellant are without merit.

The appellee was the manufacturer and original vendor of the vacuum cleaner. It furnished the cleaner to its Louisville distributor (Osborn Sales and Service Company) who in turn sold and delivered it to the water company. The equipment was designed to be operated by use of 115 AC voltage. The accident occurred when the equipment was plugged into an electrical outlet supplying 220 DC voltage. It is conceded that the impeller, or fan, violently disintegrated due to the high speed generated by the 220 DC voltage. It was shown by testimony of the president of the appellee company that prior experiments conducted by the company invariably brought about the explosive disintegration of impellers similar to the one involved here whenever 220 DC voltage was employed. It was explained that the motor used is a "universal" motor which will operate on either alternating or direct current without damage to the motor itself.

In an effort to show that appellee could have taken precautionary measures to guard against the type accident which occurred, inquiries were made by appellant of James R. McSheehy, president of the appellee company, which are reflected in the following recitation in the record:

"Q206. Now, at that time, wasn't there available some sort of governor?

A. It was available.

Q207. Let me finish the question. Wasn't there available at that time some kind of governor that would have cut this machine off and cut off the current before it reved (sic) up to the point it would rupture?

A. In the point of checking through, there was a speed indicater (sic) that would upon excess speed would throw it out, but we tried it, and it was found impractical because if you would jar the machine, it would shut it off, so that was impractical and wouldn't work. The second was an overload switch, Thermo Overload Switch. Upon checking, it couldn't be one hundred percent guaranteed by the manufacturer to do the specific job that we wanted, namely shut the machine off. On 220, you have approximately seven to eleven seconds that will run on 220. That's why you don't

get the motor burned out. If the machine is in perfect shape and balanced, it will run to approximately twelve seconds. At that time the Hineman Overload Switch would have time to activate and would shut it off. As the machine would get older and pick up dirt and pick up an imbalanced condition, it might go on having a problem before the overload switch would have time to activate, so it wasn't a perfect one hundred percent, and it could not be guaranteed to do the job and was not a practical solution to do the job.

Q208. It was not guaranteed to do the job one hundred percent?

A. It would not be guaranteed to do the job one hundred percent."

For appellee it was shown that when the cleaner was delivered to the water company by the Osborn Sales and Service Company, certain written instructions were delivered with the machine, reading in part, "Be sure to plug vacuum into the proper electrical outlet as indicated on the Name plate. If the vacuum is plugged into improper current serious damage to both machine and operator may occur." A decal, 2½ inches in width and 1½ inches in depth was supplied for affixing to the equipment, bearing the legend in silver letters on a red background:

"ONLY USE
ON 115 VOLTS
AC OR DC"

Appellant asserts that the decal was placed in an obscure position on the side of the equipment under the overhang of the breather. The name plate affixed to the equipment gives the motor and serial number and following the word "volts" carries the figure 115.

It was shown that electrical outlets for 220 DC and 110 AC existed at several places in the working area in the water company plant. These outlets were clearly marked so that the type of current afforded by each could be readily ascertained by the company's employees.

Post had been employed at the water company some eight years before his injury. In addition to his experience at the water company, he had served in various other employment in which he had experience with industrial electrical appliances and equipment. Post said that he had never observed the name plate or any decal on the sweeper. When asked about using the 220 DC outlet, he testified:

"Q84. Now, did you know—well, why did you plug this into what you knew was D.C. or 220, whatever you want to call it?

A. I figured it was 220.

Q85. What made you think it would use 220?

A. As big as it was. It was larger than a home cleaner."

Post further testified that he and his fellow employees referred to and treated the 110 and 220 voltages as if: "110 was AC and 220 was DC." It is significant to observe that Post testified that he had operated the sweeper using the 220 DC outlet for about fifteen minutes and had then turned it off for a short time, without unplugging it, while he talked on the telephone. After completing the telephone call, he turned on the motor again and it operated from five to fifteen minutes before the accident and consequent injury. The experiments conducted by appellee reflected that the disintegration of the impeller invariably occurred within "between seven and twelve seconds" in the several tests that had been made.

Without further burdening the opinion with other factual details, we believe the foregoing recital is sufficient for the purposes at hand.

Before discussing the merits of the case, it is appropriate to deal with the appellee's contention that the trial court erred in failing to quash the service of process because

appellee is an Illinois corporation and had no activities in Kentucky sufficient to bring it within the purview of KRS 271.-610(2), which statute was in effect at the time of the accident and is in this language:

"Any foreign corporation that does business in this state without having complied with the provisions of KRS 271.385 as to designation of process agent shall, by such doing of business, be deemed to have made the Secretary of State its agent for the service of process in any civil action instituted in the courts of this state against such corporation involving a cause of action arising out of or connected with the doing of business by such corporation in this state. The plaintiff in such an action shall set forth in his petition the postoffice address of the home office of the corporation."

In support of its position appellee cites Barnes v. Maxwell Motor Sales Corporation, 172 Ky. 409, 189 S.W. 444; International Shoe Company v. State of Washington, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; Le Vecke v. Griesedieck Western Brewery Company, 9 Cir., 233 F.2d 772, 777; Rock-ola Mfg. Corp. v. Wertz (C.C.A. 4th) 249 F.2d 813; Air Devices, Inc. v. Titus Mfg. Corp., 167 F.Supp. 1; Insull v. New York World-Telegram Corp., 7 Cir., 273 F.2d 166.

■ It is our view that the rationale of the authorities cited by appellee is no longer applicable in products liability cases in which the concept of "strict liability" is applicable. See Dealers Transport Company v. Battery Distributing Company, Ky., 402 S.W.2d 441. It is noteworthy that the doctrine of privity which formerly insulated the manufacturer from liability to an ultimate consumer with whom he had not dealt no longer obtains in such cases. The record discloses that appellee furnished its products for sale in Kentucky to at least two jobbers or distributors, although there was no specific contract of distributorship between appellee and either of the middle men. It is our view that the present cause of action may be regarded as having arisen from appellee's contracting to supply products within Kentucky, even though the allegedly injured consumer was not in privity with the manufacturer. See Longines-Wittnauer Watch Company v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, for a general discussion of the "doing business" concept. For a more detailed study of the changes which have occurred in this field, reference is had to the annotation in 19 A.L.R.3d, pages 13, et seq.

■ Appellant contends that his motion for a directed verdict should have been sustained, but we are not so persuaded. There was direct conflict in the testimony as to whether appellant knew or ought to have known that the equipment was specifically limited for use with 115 AC voltage. There was evidence that appellant knew or should have known that in some instances violent reaction may occur when an electrical appliance is attached to current greater than that for which it is adapted.

Neither are we persuaded that the appellee was entitled to a directed verdict. It is true that the written instructions furnished to the company at the time of delivery of the equipment made reference to the possibility of serious injury to the equipment and its operator in the event of its connection with an improper electrical outlet. It is also true that there was evidence that the equipment bore statements that it was designed for use with 115 volts, AC or DC, but the evidence respecting these notices does not unequivocally demonstrate that the nature of the danger was adequately presented so as to absolve appellee as a matter of law. In light of the evidence respecting at least two possible safety features, which may have forestalled the type accident which occurred, it may not be said

as a matter of law that the appellee was free of culpability.

Neither can it be ruled as a matter of law that appellant was guilty of contributory negligence as would preclude his recovery. Our bases for deciding that neither of the parties was entitled to a directed verdict on any of the theories advanced by them are interwoven.

Our view of the case is that the evidence was sufficient to warrant a jury's finding that the appellee furnished inherently dangerous equipment without accompanying it with the quantum of warning which would be calculated to adequately guard against the inherent danger which was known to the appellee and which appellee could reasonably foresee might occur in the expected usage of the equipment in an industrial plant where it is normal to find 220 and 110 outlets. It may be conceded that appellee had furnished some notice that the equipment was designed to be used with electrical outlets furnishing 115 voltage, AC or DC. There is grave question, however, whether such specifications were sufficient to bring home to any user of the product the gravity of the danger in violating the voltage directions. The rationale of the rule we are enunciating is variously stated in 76 A.L.R.2d 37 where it is written in part:

"A warning is, by its nature, a means of affording protection from danger. Protection which is not reasonably coextensive with the danger to which it is referable is, in effect, no protection. It follows that a manufacturer's or seller's duty to warn of product danger is a duty to give a warning which is adequate and sufficient to the danger."

\*   \*   \*   \*   \*   \*

"It has been declared that the warning must be fair and adequate, to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse."

As an example, it may be doubted that a sign warning, "Keep off the Grass," could be deemed sufficient to apprise a reasonable person that the grass was infested with deadly snakes. In some circumstances a reasonable man might well risk the penalty of not keeping off the grass although he would hardly be so daring if he knew the real consequences of his failing to observe the warning sign. Or, a warning to "Keep in a Cool Place" might not be sufficient if the result of nonobservance was a lethal explosion of the container.

The same reasoning is pertinent as respects the issue of contributory negligence. Contributory negligence, like original negligence, is the failure to exercise the degree of care that an ordinarily prudent person would exercise under the same or similar circumstances. We think the gauge for testing appellant's contributory negligence must be read in the light of the sufficiency of the warning to apprise him of the severity, gravity, and extent of the danger. As just noted, a reasonable person might hazard violation of an innocuous warning when he would have acted otherwise if the true danger were made known.

The views we have stated find support, not only in logic and reason, but in numerous reported decisions and authoritative texts. A representative, but not exhaustive, list of such precedents includes: 41 Va.Law Rev. 145; 76 A.L.R.2d 14, et seq.; Restatement of Torts, Sections 388, 389, 397 and 497; Tampa Drug Co. v. Wait, Fla., 103 So.2d 603, 75 A.L.R.2d 765; Crouse v. Wilbur-Ellis Co., 77 Ariz. 359, 272 P.2d 352; Saporito v. Purex Corp., 40 Cal.2d 608, 255 P.2d 7; Hartmon v. National Heater Co., 240 Minn. 264, 60 N.W. 2d 804; and Williams v. Caterpillar Tractor Co., Fla.App., 149 So.2d 898, in which latter case this pertinent language is used:

"In other words, was the degree of warning commensurately proportionate to the potential danger of which the manufacturer was aware, or, in the exercise of reasonable care, should have been

aware? The degree of adequacy of the warning would likewise have a direct bearing on the issue of contributory negligence of [plaintiff] * * *. [Plaintiff] could not be charged with a duty to guard against the possibility of an exploding grease fitting unless the circumstances required him to expect such a danger." Id. 149 So.2d at 903.

In Frumer-Friedman, Products Liability, Section 8.05 it is written:

"There is substantial authority that the manufacturer must give both adequate directions for use and adequate warning of potential danger. Directions and warnings serve different purposes. Directions are required to assure *effective* use, warning to assure *safe* use. It is clear from the better-reasoned cases that directions for use, which merely tell how to use the product, and which do not say anything about the danger of foreseeable misuse, do not necessarily satisfy the duty to warn."

&ast; &ast; &ast; &ast; &ast; &ast;

"In other words, * * * the misuse or failure to follow directions may be foreseeable. And even if there is some word of caution, some mention of misuse in the directions, the question still remains whether this constituted an adequate warning. The issue is whether the totality of directions or cautionary language constituted an adequate warning in the light of the foreseeable use and user of the product."

From the foregoing authorities it is deduced that the appellee could reasonably foresee the likelihood of the sweeper's being plugged into a 220 DC outlet in an industrial plant and that its warning of the consequences of such misuse was not necessarily adequate in the circumstances. It is no answer to say that appellant would have attached the machine to a 220 DC outlet anyway, since he did so in face of the directions which were furnished. Maybe he would have, but the facts at hand make that a question of conjecture. One thing

seems certain—IF the dire consequences of using 220 DC had been plainly and adequately posted—the appellee would prevail as a matter of law. The fact that reasonable differences of view may be reached as to the adequacy of the warning here makes this a jury case, both as to negligence and contributory negligence. The fallacy of appellee's position on this point is well illustrated in Spruill v. Boyle-Midway, Incorporated, 308 F.2d 79 (4th Cir. [Va.] 1962) wherein it is written:

"The defendants contend, however, that,

'The question of the sufficiency of the warning is alleviated by the mother's admission that she never read the label. Not having availed herself of the information contained on the bottle she cannot be permitted to ask for a more explanatory label.'

The short answer to this is that where the manufacturer is obligated to give an adequate warning of danger the giving of an inadequate warning is as complete a violation of its duty as would be the failure to give any warning. In this case had the warning been in a form calculated to attract the user's attention, due to its position, size, and the coloring of its lettering, and had the words used therein been reasonably calculated to convey a conception of the true nature of the danger, this mother might not have left the product in the presence of her child. Indeed, she might not have purchased the product at all, a fact of which the manufacturer appears to be aware. Having deprived the mother of an adequate warning which might have prevented the injury, it cannot be permitted to rely upon a warning which was insufficient to prevent the injury. This is the reasoning behind the rule laid down by the courts of Virginia that, '* * * [A]n insufficient warning is in legal effect no warning.' Sadler v. Lynch, 192 Va. 344, 347, 64 S.E.2d 664, 666 (1951); McClanahan v. California Spray-Chemical Corp., supra [194 Va.

842, 75 S.E.2d 712]. The jury in this case could reasonably find that the warning given was insufficient both in form and in content, and did, in fact, so find. The warning being insufficient, defendants cannot be permitted to take aid and comfort from it to any extent."

The just cited case also is persuasive authority for the proposition that the duty to provide adequate warning extends beyond the scope of *intended* use, and reaches into the field of *foreseeable* uses. Of like import are: Lovejoy v. Minneapolis-Moline Power Implement Co., 248 Minn. 319, 79 N.W.2d 688; Tomao v. A. P. DeSanno & Son, 209 F.2d 544 (3rd Cir. 1953).

We now consider whether the legal principles which we have discussed were properly presented to the jury upon the trial of this case. The trial court refused the following instruction offered in behalf of the appellant:

"2. It has been admitted by the defendant that it knew that the universal electric motor comprising a part of its assembled machinery would operate on 220 direct current and when so operated would rotate the cast aluminum impeller attached to it at such a speed that before the motor burned out or otherwise failed, the impeller would rupture and shatter the housing.

"Now, if the jury believes from the evidence that in the exercise of ordinary care the defendant should have foreseen the probability that a user of such equipment would use 220 volt direct current to operate the electric motor comprising a part of its equipment and thus be exposed to the hazards of injury resulting from such use then the court instructs you that it was the duty of the defendant, American Cleaning Equipment Corporation, either:

"(a) To give such probable user adequate warning of the danger arising from the use of high voltage in the operation of the equipment, or

"(b) In the absence of adequate warning, as set out in (a) hereof, to apply such technology as the jury may believe from the evidence was then available to the defendant to so design the impeller or equip the motor with resistors or inhibitors as to prevent the rupture of the impeller by high rotary speed.

"If the jury believe from the evidence that the defendant failed to perform the duty imposed on it by this instruction, then the law is for the plaintiff and you will so find, but unless you so believe or if you find under instruction #3, then the law is for the defendant and you will so find."

With the exception of the first literary paragraph of the offered instruction, it is our conclusion that the legal principles set out in it are correct and that the court erred in refusing appellant's request to so instruct. The instructions which were given by the court made no reference to any duty to warn and contained no requirement for adequate warning. It seems clear that there was a duty to warn, and the issues to be resolved are whether an adequate warning was given and, if not, whether the failure to give it proximately caused the injury. As subsection (c) of the approved instruction, the court shall define "adequate warning" as follows:

(c) "Adequate warning" as used in these instructions means such degree of warning as will afford to the user of the equipment, by the exercise of reasonable care on his own part, fair and adequate notice of the possible consequences of use or even misuse of the equipment.

The instruction given as to contributory negligence was proper. Upon another trial

if the evidence is substantially the same as at the first trial, the court will give the instruction herein set out, omitting the first literary paragraph of it if properly requested.

The judgment is reversed for further proceedings consistent with the opinion.

All concur except MONTGOMERY, C. J., and OSBORNE, J., who dissent.

MONTGOMERY, Chief Justice (dissenting).

I respectfully dissent because I feel that the manufacturer gave adequate warning by written instructions to the purchaser of the cleaner and to the appellant by the silver and red sign affixed to the cleaner and thus was not guilty of negligence.

Pictures of the cleaner show the warning clearly. The fair import of the warning is that the cleaner should be used on 115 volts, AC or DC, and not on 220 volts. By his admission, appellant had had considerable experience with electrical appliances and knew the difference between 115 and 220 volts. The outlets in the plant were clearly marked as to the current voltage at each outlet. Anyone handling equipment operated by or connected to electrical current should know by common knowledge that he is handling something as dangerous as a poisonous snake. To ignore the warnings on the cleaner and at the outlet, in view of his considerable experience with such appliances, indicates a reckless disregard by appellant for his own safety that amounts to gross negligence.

Under these circumstances I feel that appellee was not guilty of negligence and that appellant was guilty of negligence.

OSBORNE, Judge (dissenting).

This case represents another step down the path of socializing losses that was started in Dealers Transport Company v. Battery Distributing Co., Ky., 402 S.W.2d 441. My opinion of this sashay is fully set out in a dissent in Kroger Co. v. Bowman, Ky., 411 S.W.2d 339. The pseudo-legal jargon in which the opinion is couched is so vaporous that to attempt to attack it with legal principles would be like fighting the ocean with a sieve.

The opinion contains one blatant untruth which requires some comment. It states, "If the dire consequences of using 220 D. C. had been forcefully and adequately posted—the appellee would prevail as a matter of law." It is my opinion it would have made no difference if the lettering had been ten feet tall and in flashing strobe lights. The result would have been the same. This opinion is the result of the doctrine of absolute liability without regard to negligence which has been imposed upon manufacturers of commercial articles. Its proponents seek to conceal the fact with the use of legal jargon in a pretence toward applying legal principles. I believe we should clear the air and call the movement what it is—social engineering to socialize losses, Plant, Strict Liability of Manufacturers for Injuries Caused by Defects in Products—An Opposing View, 24 Tenn.L.Rev. 938.

Appellant received a fair trial before a jury which found against him. It is my opinion that that judgment should be affirmed.

For the foregoing reasons, I respectfully dissent.