Ronald KENDALL, Appellant,

v.

CLEVELAND CRANE & ENGINEERING
COMPANY and Bohnert Equipment
Company, Inc., Appellees.

Court of Appeals of Kentucky.

March 4, 1977.

Discretionary Review Granted
Oct. 4, 1977.

Charles M. Leibson, Leibson & McCarthy, P.S.C., Louisville, for appellant.

C. Alex Rose, Louisville, for Cleveland Crane & Engineering Co.

Ben T. Cooper, Louisville, for Bohnert Equipment Co., Inc.

Before LESTER, WILHOIT and WIN-TERSHEIMER, JJ.

LESTER, Judge.

Ronald Kendall while operating an overhead crane in Reynolds Metals Company factory on Produce Lane in Jefferson County suffered injuries when the crane snapped free from the ceiling and struck him. Kendall sued Cleveland Crane & Engineering Company, the manufacturer, Bohnert Equipment Company, Cleveland Crane's distributor through which Reynolds had dealt and Rapid Installation Company which installed the system. Kendall sought to recover on the basis of strict liability from Cleveland Crane and Bohnert and proceeded on a negligence theory against Rapid Installation. Trial of the action resulted in the jury returning a verdict for all defendants. Kendall appeals from the judgment in favor of Cleveland Crane and Bohnert.

Appellant seeks reversal claiming that the court should have granted him a directed verdict, or in the alternative, that he should receive a new trial on the ground that the court erred in instructing the jury.

On September 5, 1967 Reynolds submitted a purchase order to Bohnert Equipment Company for two overhead, underslung, floor controlled, traveling cranes for Reynolds newly completed factory. Cleveland Crane supplied all the components for this type of crane. Although the purchase order contained specifications and description of the equipment to be furnished it

made clear that Reynolds considered the vendor responsible for proper engineering, design and installation of the system. Reynolds approved the drawings submitted to it and Bohnert engaged Rapid Installation which installed the equipment supplied by Cleveland Crane.

The crane which concerns us traveled on runways 300 feet long and could be moved on these to the north part of the building or south to the loading dock. In addition the trolley with the hoist could be moved east and west between the railways on the bridge made of 50 foot double girder. The operator manipulated the crane by pressing the appropriate button of the six on the hand held control pendant which hung from a cable connected to the top of the crane. The design allowed for a 5% motion in the runways. This entire system hung suspended from the ceiling by hanger rods. The roof of the building slanted so that beginning at the eastside the length of the hanger rods went from 240 inches to 17 inches on the westside. As a consequence of the roof's angle the shorter hanger rods underwent greater stress because of excessive sway. This stress eventually caused some of the hanger rods to fail. For a period of time Reynolds simply purchased additional hanger rods to replace the broken ones, however, when Emil Graeser, the president of Bohnert, discovered this practice he became concerned and went to speak with Frank Kittel the maintenance engineer for Reynolds. This conversation resulted in Graeser contacting Carl Berge the district manager for Cleveland Crane in the Louisville area and they both went to the Reynolds plant to talk to Kittel. Graeser testified that on one of the several visits he made to Reynolds concerning the breaking hanger rods he observed an employee jogging the crane—that is alternatively pressing the forward and reverse buttons to maneuver a load into position. Cleveland Crane analyzed a broken hanger rod and sent a letter to Graeser which recommended sway bracing to prevent more than the allotted 5% movement and pointed out that a very slight pivot of the longer hanger rods would be greatly accentuated on the shorter hanger rods. Although Graeser

never forwarded a letter to this effect to Reynolds he testified that Berge revealed orally all the information contained in the letter to Kittel and that Kittel assured them both that sway bracing would be installed.

On September 30, 1971 Kendall, who had been working about 10 days as a crane operator, while attempting to place a 2,070 pound load into a truck, heard a loud pop at which time he glanced up and tried unsuccessfully to avoid the falling crane. No one apprised Kendall of the danger caused by the failing hanger rods.

We feel that *Post v. American Cleaning Equipment Corporation*, Ky., 437 S.W.2d 516 (1968) answers appellant's contention that his motion for a directed verdict should have been sustained. In that case Post received injuries while using an industrial vacuum cleaner when a fan in it disintegrated due to its being operated from an electrical outlet supplying 220 DC voltage. The manufacturer included written instructions with the machine which read in part, "Be sure to plug vacuum into the proper electrical outlet as indicated on the Name plate. If the vacuum is plugged into improper current serious damage to both machine and operator may occur." A decal affixed under the overhang of the breather stated, "Only use on 115 volts AC or DC." *Post, supra,* at 518. In regard to Post's claim that the trial court erred in refusing to direct a verdict in his favor, the Court wrote,

. . . we are not so persuaded. There was direct conflict in the testimony as to whether appellant knew or ought to have known that the equipment was specifically limited for use with 115 AC voltage. There was evidence that appellant knew or should have known that in some instances violent reaction may occur when an electrical appliance is attached to current greater than that for which it is adapted.

The Court went on to say,

[n]either are we persuaded that the appellee was entitled to a directed verdict. It is true that written instructions furnished to the company at the time of

delivery of the equipment made reference to the possibility of serious injury to the equipment and its operator in the event of its connection with an improper electrical outlet. It is also true that there was evidence that the equipment bore statements that it was designed for use with 115 volts, AC or DC, but the evidence respecting these notices does not unequivocally demonstrate that the nature of the danger was adequately presented as to absolve appellee as a matter of law. *Post, supra* at 519.

This reasoning applies equally to the case before us now since clearly Kittel constituted the proper person to receive notification as to the crane's defects. *Ulrich v. Kasco Abrasives Co.*, Ky., 532 S.W.2d 197 (1976). Although the jury had sufficient evidence to find for the appellant, the conversations Berge and Graeser had with Kittel prevented such a finding as a matter of law, despite the fact that there remains considerable doubt as to whether these discussions sufficiently revealed the danger caused by the breaking hanger rods.

■ The appellant complains of faulty instructions as his second ground for reversal. As to appellant's reliance upon the holding in *House v. Kellerman*, Ky., 519 S.W.2d 380 (1974) it would seem that he has not properly preserved the error on appeal. The Court in *House, supra,* reversed the judgment of the lower court because in submitting the case to the jury the circuit judge gave a superceding cause instruction. The court in the case at bar did indeed instruct the jury that if Reynolds' activity was the sole cause of the accident, the law is for all the defendants. However, the source of this instruction can be traced to an instruction tendered to the court by the plaintiff. CR 51(3) reads in part that, "no party may assign as error the giving or the failure to give an instruction unless he fairly and adequately presented his position by an offered instruction . . . ." Consequently we cannot consider appellant's argument on this point.

The appellant also takes issue with the trial court's failure to instruct the jury as to the inherent dangers that the appellees could have reasonably foreseen which may have resulted from the expected usage of the equipment. This contention has merit since the foreseeable uses of the crane system had a direct impact on the degree of detail that the appellees must have provided as to defects and the consequences of these defects. The instructions by the court placed a duty on the appellees, to furnish an overhead crane system free from defects in design or construction such as would cause the overhead crane system to be unreasonably dangerous to the ultimate user, and further in the event appellees learned of such defects after installation to notify Reynolds of these defects and that the use of the crane should be discontinued until such defects were corrected. These instructions cause us concern because appellees in their defense below placed a great deal of emphasis on attributing the accident to Reynolds' neglect in installing sway bracing after being informed of the need for it and to misuse of the crane through jogging. However, the indication as to the need for sway bracing may not have sufficiently communicated the danger created by the lack of such bracing and jogging may be an expected use.

■ The court in *Post, supra*, at 521 quoted with approval Frumer-Friedman, *Products Liability*, section 8.05 which states,

. . . the misuse or failure to follow directions may be foreseeable and even if there is some word of caution, some mention of misuse in the directions, the question still remains whether this constituted an adequate warning. The issue is whether the totality of directions or cautionary language constituted an adequate warning in the light of the foreseeable use and user of the product.

In that case the court held that the circuit court erred when it refused appellant's instructions which encompassed the foreseeable uses to which the product in issue might be put and in light of such foreseeable uses placed a duty on the manufacturer to either give an adequate warning of the danger or to apply such technology then available so as to prevent the failure of the product. Unfortunately the instructions in this case do not meet that standard. The fatal flaw lies in the absence of any mention of the

dangers the appellees could reasonably foresee which would result from the expected usage of the crane system. This omission takes on importance because the jury may have concluded that once the appellees pointed out to Reynolds that the defect could be corrected by sway bracing they had no obligation to relay the danger involved in not having the bracing. The court's direction that appellees had the duty to notify Reynolds that the use of the crane should be discontinued until the defects were corrected does not go far enough to enlighten the jury as to what would be an adequate warning considering the course of conduct appellees could have reasonably anticipated Reynolds would take. In *Ulrich, supra* at 200 we find this language:

. . . as aptly observed in 62 Ky.L.J. 866, 875, "the important factor is how safe or dangerous the product is when used as it was intended to be used" (or should reasonably have been anticipated to be used). If the danger is unreasonable because it is not obvious and may not be apprehended by such a person, then it may be obviated by an adequate warning, so provided or affixed that in the ordinary course of events it will reach and should be understood by that person.

Since our holding here necessitates a new trial we will set out instructions which are consistent with the principles stated in this opinion and will hopefully be of assistance to the parties and to the trial court.

If the jury believe from the evidence that the defendants should have foreseen that Reynolds would not see to the installation of bracing sufficient to prevent the breakage of the hanger rods or would allow the crane to be operated in such a manner so as to cause excessive sway, thus exposing the crane operator to the hazards of injury then the court instructs you that,

(1) it was the duty of the defendant, Cleveland Crane & Engineering Co. either

(a) to give Reynolds adequate warning of the danger arising from the failure of the hanger rods, or

(b) in the absence of adequate warning, as set out in (a) hereof, to apply

such technology as the jury may believe from the evidence was then available to the defendant to so design the crane system as to prevent the breaking of the hanger rods by the motion of the system.

If the jury believe from the evidence that Cleveland failed to perform the duty imposed on it by this instruction then the law is for the plaintiff and you will so find, but unless you so believe the law is for the defendant and you shall so find.

(2) It was the duty of the defendant, Bohnert Equipment Company, either

(a) to give Reynolds adequate warning of the danger arising from the failure of the hanger rods, or

(b) in the absence of adequate warning, as set out in (a) hereof, to furnish a crane system to which was applied such technology as the jury may believe from the evidence was then available to Cleveland Crane to so design the crane system as to prevent the breaking of the hanger rods by the motion of the system.

If the jury believe from the evidence that Bohnert failed to perform the duty imposed on it by this instruction then the law is for the plaintiff and you will so find, but unless you so believe the law is for the defendant and you shall so find.

(3) "Adequate warning" as used in these instructions means such degree of warning as will afford to Reynolds, by the exercise of reasonable care on its own part, fair and adequate notice of the possible consequences of use or even misuse of the equipment.

The Judgment below is reversed.

All concur.