**Larry ENLOW, Ancillary Administrator for the Estate of Judith Enlow Plaintiff**

**v.**

**ST. JUDE MEDICAL, INC. Defendant**

**No. CIVA3:00CV–666–S.**

United States District Court, W.D. Kentucky.

Oct. 18, 2001.

856

Frederick D. Hatmaker, Louisville, KY, Irwin M. Ellerin, Ellerin & Associates, Atlanta, GA, Gary Robert Hillerich, Louisville, KY, for plaintiff.

W. Bruce Baird, Charles M. Pritchett, Jr., Thomas Patrick O'Brien, III, Arthur S. Beeman, Lori Elizabeth Hammond, Frost, Brown & Todd, Louisville, KY, for defendant.

### *MEMORANDUM OPINION*

SIMPSON, Chief Judge.

This matter is before the court on the motion of the defendant St. Jude Medical, Inc. ("St.Jude") for partial summary judgment. For the reasons set forth below, St. Jude's motion will be granted.

### *BACKGROUND*

This product liability claim arose from the death of Judith Enlow ("Enlow") on December 14, 1999. Plaintiff claims Enlow's death was caused by a malfunction of a mechanical heart valve manufactured and sold by St. Jude and surgically implanted in Enlow immediately prior to her death. (Pltf. Complaint ¶ 4–10).

Under the Medical Device Amendments of 1976, 21 U.S.C. § 360c *et seq.,* ("MDA") the Food and Drug Administration ("FDA") has authority to regulate medical devices, such as St. Jude's mechanical heart valve. The FDA classified the valve as a Class III device and, as such, required that St. Jude provide the FDA with "rea-

sonable assurance" of the valve's safety and efficacy before it could be marketed. 21 U.S.C. § 360e(d)(2). St. Jude submitted a pre-market approval application ("PMA"), which the FDA approved in 1982. St. Jude subsequently modified the valve and accordingly submitted a PMA Supplement application, which the FDA approved in 1995. The mechanical heart valve implanted in Enlow was produced and marketed according to the 1995 PMA Supplement. (Def.'s Mem. Supp. Partial Summ. J. Exh. 1).

## DISCUSSION

St. Jude bases its Motion for Partial Summary Judgment on grounds that the plaintiff's claims of design defect, negligent design, breach of express and implied warranties, and failure to warn are preempted by the MDA. St Jude Medical further argues that the plaintiff's claims of manufacturing defect and negligent manufacturing, testing, or inspection are preempted by the MDA to the extent they assert the mechanical heart valve was defective, or that St. Jude was negligent, despite adherence to the FDA approved manufacturing processes and specifications.

In order to support a motion for summary judgment, a moving party must prove the absence of a genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a summary judgment motion, a judge's role is not to weigh the evidence or determine its truth, but to determine if a genuine question of fact exists. *Id.* at 249, 106 S.Ct. 2505. In making these determinations, the court is to view all facts and inferences in a light most favorable to the nonmoving party. *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941 (6th Cir.1990).

As a threshold issue, plaintiff asserts that St. Jude's motion is premature due to insufficient time for discovery. FRCP 56 requires that the opponent to a summary judgment motion have adequate time for discovery. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, in order to obtain more time for discovery the plaintiff is required to submit an affidavit stating reasons why "the party cannot ... present by affidavit facts essential to justify the party's opposition." FED. R. CIV. P. 56(f). The plaintiff has not submitted such an affidavit and thus has not met the requirements for a continuance for further discovery under FRCP 56(f). St. Jude's motion is therefore properly considered at this time. *See Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir.1989).

Preemption is primarily a question of Congressional intent. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517–18, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Id.* at 517, 112 S.Ct. 2608. Therefore when express preemption is provided for, a court may not consider implied preemption. The express preemption provision of the MDA provides:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement-
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

 Preemption under § 360k(a) thus occurs "only when the state and federal requirements meet certain criteria." *Martin v. Telectronics Pacing Systems, Inc.,* 105 F.3d 1090, 1094 (6th Cir.1997). First, the "federal requirement 'must be applicable to the device in question... and specific to a particular device.'" *Id.* (quoting *Medtronic v. Lohr,* 518 U.S. 470, 500, 116 S.Ct. 2240, 2257, 135 L.Ed.2d 700 (1996)). Second, "the state requirement must be 'with respect to' a medical device and must be 'different from, or in addition to' federal requirements." Further, the state requirements "must relate 'to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device.'" *Id.* If the state requirement is one of general applicability, it must "have 'the effect of establishing a substantive requirement of a specific device'" in order to be preempted. *Id.* Generally applicable state requirements may also be preempted if they are "the kinds of requirements that would impede the implementation and enforcement of specific federal requirements." *Id.* at 1099 (citing *Medtronic,* 518 U.S. at 501, 116 S.Ct. 2240). Therefore, in order for the plaintiff's claims to be preempted by the MDA, St Jude's mechanical heart valve must first be subject to a specifically applicable federal requirement. Second, the plaintiff's cause of action must amount to claims for the imposition of state requirements applicable to the valve that differ from or add to the federal requirement or, alternatively, impose generally applicable state requirements that either effectively establish a specific requirement for the valve or impair or impede enforcement of the federal requirement. Because our jurisdiction is invoked based on diversity, we apply state substantive law with respect to the claims in the Complaint. We are therefore asked to impose standards and requirements that a Kentucky court would impose under similar circumstances.

The Sixth Circuit has held that where, as here, the FDA has approved a medical device under a PMA Supplement and imposed conditions of approval, a specific federal requirement for purposes of preemption under the MDA is established. *See Kemp v. Medtronic, Inc.,* 231 F.3d 216, 228 (6th Cir.2000). Further, the Sixth Circuit concluded that the specific federal requirement established by such approval consists of "the totality of the design, manufacturing processes, and labeling when coupled with the prohibition against modifying them" as found in the "entire relevant PMA and accompanying PMA Supplement." *Id.* at 228. Therefore, any of the plaintiff's claims seeking to impose a state requirement that differs from, adds to, or impedes the implementation and enforcement of the design, manufacturing processes, or labeling contained in mechanical heart valve's original PMA or PMA Supplement is preempted. Accordingly, the plaintiff's claims must be analyzed separately. *See Mitchell v. Collagen Corp.,* 126 F.3d 902, 912 (7th Cir.1997).

### I. Strict Liability

### A. Defective Design

 FDA review of St. Jude's PMA Supplement contained an evaluation of the mechanical heart valve's safety and efficacy. *See Kemp,* 231 F.3d at 221 (citing 21 U.S.C. § 360c(a)(1)(C)). FDA approval of the PMA Supplement also constituted "approval of a specific device of a particular design." *Id.* at 228. Approval of the PMA Supplement thus signified the FDA found the valve's design to be safe. Under Kentucky law, a product is defectively designed if the design renders it unreason-

ably dangerous. *See Worldwide Equip., Inc. v. Mullins,* 11 S.W.3d 50 (Ky.App.1999)(citing *Ulrich v. Kasco Abrasives Co.,* 532 S.W.2d 197 (Ky.1976)). Therefore, the fact finder applying Kentucky's test for defectiveness might determine the valve's design was unreasonably dangerous in spite of its approval by the FDA. Since the state requirement would differ from the federal requirement, plaintiff's claims for defective design must be preempted. *See Martin,* 105 F.3d at 1099 ("[B]ecause under the federal requirement the FDA has determined that the benefits of the device outweigh the risks and, under the state requirement, a jury in a state court action could conclude that the risks outweigh the benefits, the state requirement is different from the federal requirement.").

### B. Manufacturing Defect

■ Similarly, PMA Supplement approval constituted approval of the "particular manufacturing processes." *Kemp,* 231 F.3d at 228. A finding that adherence to the approved processes resulted in an unreasonably dangerous product would differ from the federal requirement. The plaintiff argues that a manufacturing defect claim under Kentucky law requires proof that the product did not meet the manufacturer's required specifications. Therefore, according to the plaintiff, such a showing under state law would merely enforce the FDA requirement that St. Jude adhere to the FDA approved manufacturing processes. While plaintiff correctly states the standard for a manufacturing defect claim in Kentucky, *see Ford Motor Co. v. McCamish,* 559 S.W.2d 507 (Ky.Ct.App. 1977), St. Jude's motion only requests summary judgment on the manufacturing

defect claim "to the extent [it asserts] that the Mechanical Heart Valve at issue was defective ... *despite adherence to FDA approved processes and specifications.*" (Def. Mot. Partial Summ. J.)(emphasis added). Therefore, the plaintiff's argument, while correct, is not applicable. To the extent the plaintiff's manufacturing defect claim alleges that St. Jude's valve was defective despite adherence to the FDA approved manufacturing processes, it imposes a requirement different from the federal requirement and is accordingly preempted. *See Mitchell,* 126 F.3d at 913.

### C. Failure to Warn [1]

■ Under Kentucky law a manufacturer is liable for a failure to warn when "the [manufacturer] furnished inherently dangerous equipment without accompanying it with the quantum of warning which would be calculated to adequately guard against the inherent danger which was known to the [manufacturer] and which [the manufacturer] could reasonably foresee might occur in the expected usage of the [product]." *Post v. American Cleaning Equipment Corp.,* 437 S.W.2d 516, 520 (Ky.1968). Therefore, a failure to warn claim may be premised on an absence of warning or an inadequate warning. *See id.*

The plaintiff alleges that St. Jude "failed to warn the physicians implanting the valve ... of the prior history of leaflet malfunction, including inappropriate and/or improper opening and/or closing and/or otherwise failing to perform in the manner designed and intended." (Pltf.Am.Compl.¶ 29). However, the manual St. Jude provides to physicians regard-

---

1. The plaintiff did not amend his Complaint to include a failure to warn claim until after St. Jude filed its Motion for Partial Summary Judgment. However, as St. Jude included this claim in its motion and each party has advanced extensive arguments on the issue, the court will consider the plaintiff's failure to warn claim at this time.

ing the mechanical heart valve contains the following warning:

> Three cases of impeded leaflet motion not satisfactorily explained were reported in a survey of 149 centers reporting on 4,934 patients implanted over a period of three (3) years. A number of other cases occurred early in the investigation of this prosthesis; however, the rates of occurrence are not statistically determinable.

(Def. Reply Mem. Supp. Summ. Jdg. Exh. A).

Therefore, St. Jude included a warning to physicians regarding a prior history of impeded leaflet motion. To the extent the plaintiff claims a complete failure to warn physicians of such a danger, there is no genuine issue of material fact and summary judgment will be granted.

Further, the precise language of the warning cited above was mandated by the FDA. (Def. Reply Mem. Supp. Summ. Jdg. p. 5). The Sixth Circuit has found that a failure to warn claim regarding medical devices approved pursuant to a PMA Supplement are preempted by the MDA "to the extent that ... claim is premised on the adequacy of the warnings reviewed and approved by the FDA ...." *Kemp*, 231 F.3d at 236 (citing *Martin*, 105 F.3d at 1100). Therefore, to the extent the plaintiff claims the above cited warning or any other FDA approved warnings are inadequate, the claim is preempted.

■ Additionally, the plaintiff argues that after receiving FDA approval St. Jude received information regarding instances of the mechanical heart valve's malfunction that were not included among the FDA approved warnings. The plaintiff asserts that *Kemp* implicitly recognized a state law claim based on the failure to warn of risks learned after FDA approval but before the device was implanted as not preempted. This court does not agree with the plaintiff's characterization of the

*Kemp* opinion. The Sixth Circuit merely declined to address the issue because the plaintiff failed to raise it in a timely manner. *See Kemp*, 231 F.3d at 237. Therefore any implication regarding the MDA's preemptive effect on failure to warn claims based on post-approval, pre-implantation risks is drawn solely by the plaintiff and must accordingly be discussed.

Any warnings based on risks learned of post-PMA Supplement approval are ultimately subject to FDA approval. Specifically, the FDA conditions of approval require that another PMA Supplement be submitted "when unanticipated adverse effects, increases in the incidence of anticipated adverse effects, or device failures necessitate a labeling ... modification." (Def.'s Mem. Supp. Partial Summ. J. Exh. 1C). As stated above, after such approval is in fact granted, a state failure to warn claim is preempted. Allowing a state failure to warn claim to arise from labeling that is pending FDA approval and preemption would impose state requirements that differ from federal requirements based upon whether the cause of action arose before or after such approval was granted. The plaintiff's failure to warn claim is therefore preempted.

## II. Negligence

### A. Negligent Design

■ FDA approval of St. Jude's PMA Supplement signified the valve's design was found to be safe and effective. *See Kemp*, 231 F.3d at 221, 228 (citing 21 U.S.C. § 360c(a)(1)(C)). Therefore, as with plaintiff's strict liability claim, a finding under state law that the valve was negligently designed would impose a requirement that differs from the FDA approved design. Plaintiff's negligent design claim is therefore preempted.

## B. Negligent Manufacturing

 The plaintiff's negligent manufacturing claim is preempted to the extent it alleges St. Jude was negligent despite adherence to the FDA approved manufacturing, testing and inspection processes. FDA approval of the mechanical heart valve constituted an approval of specific manufacturing processes. *See Kemp,* 231 F.3d at 228. A finding under the state requirement that St. Jude was negligent despite adherence to the FDA approved requirements would differ from the FDA finding that its approved manufacturing requirements rendered the product safe. *See Mitchell,* 126 F.3d at 913.

## III. Breach of Express and Implied Warranties

Express warranties are created in Kentucky as follows:

(a) Any affirmations of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

KRS 355.2–313(1).

 Therefore, the requirement of a breach of express warranty claim is that goods fail to conform to the manufacturer's express representations. The FDA conditions of approval mandate that "[n]o advertisement or other descriptive printed material issued by [St. Jude] ... with respect to this device shall recommend or imply that the device may be used for any use

that is not included in the FDA approved labeling for this device." (Def.'s Mem. Supp. Partial Summ. J. Exh. 1C). St. Jude's express representations regarding the valve are therefore limited to the labeling approved by the FDA. Further, FDA approval of the PMA Supplement for the valve constituted an extensive review and approval of the product's labeling. *See Kemp,* 231 F.3d at 226, 228; *see also Martin,* 105 F.3d at 1095 (citing 21 U.S.C. § 360e(c)(1); 21 C.F.R. § 814.20 (1996)). The federal requirements consist of the "PMA Supplement, taken together with the conditions of approval imposed on the device by the FDA." *Kemp,* 231 F.3d at 227–28. A claim under state law that the mechanical heart valve did not conform to the representations made on its labeling would therefore impose a requirement that differs from or adds to the federal requirement. *See Martin,* 105 F.3d at 1101.

The plaintiff urges the court to adopt the Third Circuit's reasoning in *Michael v. Shiley, Inc.,* 46 F.3d 1316 (3rd Cir.1995). In *Michael,* the Third Circuit held the MDA does not preempt breach of warranty claims arising from allegedly defective medical devices approved pursuant to a PMA Supplement because such claims "arise from the representations of the parties" and "do not result from the independent operation of state law." *Michael,* 46 F.3d at 1325. Therefore, according to the court, such claims do not constitute a state requirement.

First, the Sixth Circuit expressly declined to follow *Michael* in *Martin v. Telectronics Pacing Systems, Inc.,* 70 F.3d 39 (6th Cir.1995) *reconsidered in* 105 F.3d 1090 (6th Cir.1997)(*"Martin I"*). Second, this court finds the Third Circuit's reasoning unpersuasive. For example, the Third Circuit concluded that labeling of a medical device is "ultimately a product of [the manufacturer's] voluntary actions" be-

cause, although subject to FDA approval, the manufacturer "itself drafted the language." *Michael,* 46 F.3d at 1328. While this assertion is technically correct, it minimizes the comprehensive FDA regulation of medical device labeling. "[T]he representations that can, cannot, and must be made about an investigational device are all determined by the FDA." *Martin I,* 70 F.3d at 42 (quoted in *Martin,* 105 F.3d at 1101).

The plaintiff argues that *Martin* is distinguishable because it dealt with an investigational medical device ("IDE") approved under the FDA's IDE process rather than a device approved under a PMA Supplement. The plaintiff distinguishes *Martin* on the basis that the FDA prohibits an IDE manufacturer from making express representations regarding the safety or effectiveness of the device while such a prohibition does not apply to devices approved pursuant to a PMA Supplement. However, the *Martin* decision was based on the fact that "[e]xpress representations about investigational devices are subject to comprehensive FDA regulation." *Martin* 105 F.3d at 1100. The prohibition on safety and effectiveness representations was merely an example used by the court to illustrate the scope of FDA regulation. The court also pointed out that IDE manufacturers are required to submit "all investigational device labeling to the FDA for approval." *Id.* Similarly, St. Jude, as a manufacturer receiving approval pursuant to a PMA Supplement, is required to submit all labeling for FDA approval. Likewise, as previously discussed, its mechanical heart valve labeling is subject to comprehensive FDA regulation through the PMA Supplement application process and subsequent conditions of approval. Thus, the plaintiff's argument points to a distinction without a difference and, in accord with *Martin,* the plaintiff's claim of breach of express warranty is preempted.

The plaintiff's breach of implied warranty claim is similarly preempted. "[A]n implied warranty claim is based on the accepted standards of design and manufacture of the products. In the case of a product that has gone through the PMA process, these criteria are set by the FDA. A state judgment for breach of implied warranty that rested on allegations about standards other than those permitted by the FDA would necessarily interfere with the PMA process and, indeed, supplant it. Accordingly, such a claim is preempted." *Mitchell v. Collagen Corp.,* 126 F.3d 902, 915 (7th Cir.1997).

## CONCLUSION

For the reasons set forth above, St. Jude's Motion for Partial Summary Judgment will be granted with respect to the plaintiff's claims of design defect, failure to warn, and breach of express and implied warranties. With respect to the plaintiff's claims of negligent design, negligent manufacturing, testing, or inspection, and manufacturing defect, St. Jude's Motion for Partial Summary Judgment is granted to the extent the plaintiff's claims allege St. Jude was negligent or the mechanical heart valve was defective despite adherence to FDA approved design and manufacturing processes and specifications. A separate order will be entered this date in accordance with this opinion.